250 P.2d 487

**BASSETT v. BASSETT.**
**No. 5515.**

Supreme Court of New Mexico.
Nov. 20, 1952.

Hannett & Hannett, Albuquerque, for appellant.

Iden & Johnson, Albuquerque, for appellee.

COORS, Justice.

This is an appeal by petitioner below and appellant here, Cornish Bassett, from an order entered by the District Court of Bernalillo County dissolving and dismissing a writ of habeas corpus sued out by appellant and awarding the custody of two minor children to their mother, appellee and respondent below, Jean Campbell Bassett.

Appellant filed in the District Court of Bernalillo County, New Mexico, a petition for the writ of habeas corpus on the 17th day of September, 1951, against his wife, the appellee, seeking a writ of habeas corpus on behalf of the two minor children of the appellant and appellee, Thomas Campbell Bassett, a son eight years of age and Stephanie Bassett, a daughter six years of age, to require the delivery of the minor children to an officer of the court forthwith until trial and upon trial that the court award the custody of the children to him.

The appellee filed her return to writ of habeas corpus and answer to the petition by her attorneys and the appellant filed his reply thereto. The matter came on for hearing before the court, at which time both the appellant and the appellee, and also the two minor children, were actually present in person during the hearing and the appellant and appellee both appeared by their respective counsel.

After all of the evidence was introduced by appellant and appellee, and after hearing argument of counsel, the court announced orally, on the 18th day of December, what its decision would be. Neither of the parties sought, or requested any findings of fact or conclusions of law and no formal written findings of fact or conclusions of law were made by the court, excepting such as were found in the said final order itself, entered December 20, 1951.

Certain portions of the order appealed from should be kept clearly in mind in the discussion of this appeal, and such portions of the order are therefore quoted as follows:

"That the Respondent, Jean Campbell Bassett, has actually been residing in Bernalillo County, New Mexico, since September 1, 1951; that Respondent has provided a suitable home for herself and said two children in Albuquerque, New Mexico, and that said two children, since the beginning of the fall school term, have been and still are regularly attending school in the City of Albuquerque, New Mexico; that both the Petitioner, Cornish Bassett, and the Respondent, his wife, Jean Campbell Bassett, and the two minor children of the parties named in the

petition are actually in Court and that the Court has jurisdiction of all parties and the subject matter of this cause.

"That upon all the evidence introduced the Court finds and concludes that the Respondent is a proper person to have the care and custody of both of said minor children and that it is for the best interests of the said two minor children that they remain in the custody of their mother, the Respondent, and not be disturbed by the Petitioner, and it is accordingly ordered that the custody of said two minor children, Thomas Campbell Bassett and Stephanie Bassett, be and the same hereby is awarded to their mother, Jean Campbell Bassett, the Respondent herein, until the further order of the Court, and the Writ of Habeas Corpus heretofore issued herein is now dissolved and dismissed.

" * * * Petitioner is given the right to visit the said minors at Respondent's abode at all reasonable times."

The evidence disclosed the following facts: That the appellant was at the time of the hearing, and during his entire lifetime had been, a resident and inhabitant of the state of Massachusetts; that the appellant and appellee were married in the year 1941 and established their residence in Massachusetts and continued to live there together as husband and wife until June 1951; that there were born to them the two children above mentioned; that in June 1951 the appellee, mother of the children, took them with her to California for a vacation; that on August 27, 1951, the appellant, father of the children, met his wife and the children in Pasadena, California, and they lived together until August 31, 1951, when the wife and the two children boarded the train at Pasadena, apparently bound for Boston, Massachusetts, with the understanding that the husband would fly back and would meet his wife and children at the railroad depot in Boston upon their arrival a few days later. When the mother and children reached Albuquerque, N. M., they left the train, on the first day of September, 1951, where they have been physically present and residing from that time to and including the time of the hearing by the trial court. The appellant, upon his arrival in Boston, was advised by telephone by an aunt of the appellee that the appellee and her two children had left the train at Albuquerque and did not propose to return to him in Massachusetts.

A few days after their arrival in Albuquerque, N. M., the mother leased a home for herself and children in a desirable residential district of Albuquerque. Both children were immediately placed in a private school and continued to attend school, and were doing satisfactory work during the time prior to the trial. The little boy had joined the Cub Scouts and weekly den meetings were held at his home. A competent

housekeeper had been employed and was assisting the appellee with the housework and attending both the children.

The appellant was an accountant, doing work for small businesses, and was also a salesman for prefabricated houses in Milton, Massachusetts, which was his domicile. His total income was approximately $6,000 a year, more or less. The appellee had an independent income of her own in excess of the income of her husband.

We believe it is unnecessary to discuss the evidence in detail as there was substantial evidence to support the final order of the trial court and the findings and conclusions contained therein. The points relied upon by appellant we consider as questions of law rather than questions of fact. There was no evidence in the case to show that during their residence in New Mexico, from September 1 to the time of the trial, the children were not properly and well cared for, nor any evidence that they would not be well cared for in the future while in Albuquerque with their mother.

Point I made by appellant reads as follows:

"The trial court did not and could not acquire jurisdiction to award the custody of the children to the appellee in a habeas corpus proceeding because appellee could not, has not, and cannot establish such domicile in New Mexico as to give the court jurisdiction unless it affirmatively appears that the appellant has been guilty of an act or acts which would constitute a ground for divorce or separation in that it affirmatively appears that the parties have not permanently separated and that the only ground of complaint against appellant as a father or husband is that appellee, the wife, insists upon selecting the domicile of the parties contrary to the form of the statute in such cases made and provided and contrary to the natural laws governing husband and wife."

The theory of appellant's contention is apparently that the jurisdiction of the New Mexico court to determine and award custody of minor children residing and physically present in New Mexico depends upon the legal domicile of the mother and the children and that, inasmuch as the husband's domicile is in Massachusetts the wife's domicile, and likewise the domicile of the children, follows that of the father, except in cases where a woman is legally justified in establishing a separate domicile from her husband on account of his misconduct, which would constitute a ground for divorce or legal separation, which misconduct on the part of appellant is not present in this case. In other words, that the only state court having jurisdiction to award custody of the children would be the court of the domicile of the husband in

Massachusetts even though the wife and the children were absent therefrom and residing in another state.

While there may be some minority support for such a contention we find the overwhelming weight of authority otherwise and in support of the judgment of the lower court in this case under similar facts and circumstances. It must be borne in mind that there was no judgment or decree of any court of Massachusetts or any other state excepting New Mexico in any proceeding granting a divorce or legal separation between appellant and appellee or any decree involving the custody of the children. Neither was there any action pending of any such nature between these parties in any other state but New Mexico. Consequently, no question is involved with reference to giving full faith and credit to a judgment or decree of any court in another state or foreign country.

The appellant, a resident of Massachusetts, came to New Mexico and filed, in the district court of Bernalillo County, the petition for a writ of habeas corpus against his wife, appellee, and thereby himself invoked the jurisdiction of the New Mexico court before which he appeared in person and by counsel and as a witness in the proceeding. The appellee was present and residing within the jurisdiction of the trial court. She was personally served in Albuquerque, Bernalillo County, New Mexico; appeared personally and by counsel in the case, and the children, who were residing with their mother, appeared personally before the court during the hearing.

Counsel for appellant says this case is one of first impression in this jurisdiction. While we believe it is the first time that the jurisdiction of the court has been questioned in a child custody case where the father and mother, both parties to the action, and also the minor children, the subject of the controversy, were personally and physically present within the jurisdiction and before the court at the hearing, still it is not a new question for this court, as may be seen by referring to our opinion in the case of Payton v. Payton, 29 N.M. 618, 225 P. 576, wherein jurisdictional questions were discussed and determined. In quoting therefrom we find the following:

"It may be that, loosely speaking, provision for the custody and support of children is an incident to a divorce in the same sense that alimony may be incidental, but it does not follow that the court in every case has jurisdiction of the one incident any more than of the other. Technically, such provision is not an incident of the divorce; but upon an adjudication whereby a permanent separation of the parents is legally effected, and a child of the marriage is deprived of the joint care and control of its parents, the state immedi-

ately, as parens patriae, becomes interested in the welfare of such child to the end that it may receive proper training for citizenship and not become a public burden. But the state stands in the relation of parens patriae only with respect to such children as are within its borders. The state has no legal control over or interest in the children of another state, and can make no order through its courts with respect thereto, except, possibly, to adjudicate the equitable personal rights of the parents themselves, if both be before the court.

"When a court adjudicates with reference to the custody and support of a child in the ordinary divorce case, where both parents are before the court and the child is within the jurisdiction, the right to so adjudicate may rest on either or both of two theories: (1) The interest of the state as parens patriae; and (2) the personal rights of the parents with respect to the child as between themselves. In such a case it makes no difference upon which theory the jurisdiction is based, and, as a matter of fact, the court would probably not stop to consider which theory is adopted; but, when the child is beyond the jurisdiction, and therefore not a ward of the court or of the court's state, the first theory cannot be used as a basis of jurisdiction and

when, in addition to this, only one of the parents is before the court, no personal rights and liabilities can be adjudicated. That is the situation here.

"The child not being within the state, the court was without jurisdiction to award custody or support money on the theory of guardianship, and, the mother not being before the court, there was no jurisdiction to award personal relief to her."

█ It is thus seen that we have already passed upon this question, holding that there is jurisdiction in custody cases where both parents are before the court and the child, or children, involved are within its jurisdiction and in such case the court's right to adjudicate rests and is based upon either or both of two theories; 1. that it is the interest of the state as parens patriae, and 2. that it may pass upon personal rights of the parents with respect to the child as between themselves.

█ The rule is well established by the great weight of authority that jurisdiction in child custody cases does not depend upon legal domicile but, where the minor child is actually residing and physically present within the territorial jurisdiction of the court, such court takes and has jurisdiction by virtue of the doctrine of parens patriae regardless of the legal domicile of the child.

The Supreme Court of Texas, in Wicks v. Cox, 146 Tex. 489, 208 S.W.2d 876, 878,

4 A.L.R.2d 1, held that the Texas trial court had jurisdiction of a habeas corpus proceeding against the mother of the child who was domiciled in Texas to determine the custody of the child who was present in Texas through the mother's ruse, although the child was domiciled in Virginia. They further held that the state where a child may have a temporary residence has jurisdiction concurrently with courts of the state of domicile to determine custody where they are in as good a position to determine child's welfare. The Texas Supreme Court said:

"* * * So, whatever doubt may have once existed on the subject, the rule now is that technical legal domicile of the child in this state is not a sine qua non of child custody jurisdiction on the part of our courts."

This case was decided in Texas in 1948. In a later case in Texas, decided in 1949, entitled Worden v. Worden, 148 Tex. 356, 224 S.W.2d 187, the court cited and quoted with approval the ruling made in the case of Wicks v. Cox, supra, and announced that in the child custody question involved in this case the principal consideration was the welfare of the child rather than the rights of the spouses against each other.

There appears in 4 A.L.R.2d, immediately following the case of Wicks v. Cox, supra, on page 7 et sequi, a very exhaustive annotation upon the subject "Jurisdiction to award custody of child having legal domicile in another state." The able and lengthy annotation from pages 10 to 24 inclusive, deals with the question of law here involved, raised by appellant's Point I, and contains citations and quotations from very numerous decisions of the courts in many states of the Union with reasoning and analysis by the author. We quote and refer to portions of this annotation which we feel cover and govern the question before us:

"Sec. 1. Scope; related questions.

"As the title suggests, this annotation is concerned with the power of the court of one state to make an award of the custody of a child which is a legal domiciliary of another state.

"* * * For the purpose of this annotation only such cases are included as expressly or by necessary implication find the domicil to have been without the jurisdiction of the court awarding the custody.

"Sec. 2. Analysis and summary.

"* * * Where actual residence and domicil differ, the state of actual residence will probably be better equipped to arrive at a sound determination—especially where the test of domicil is based on the patriarchal concept of the family.

*     *     *     *     *     *

"The stress placed upon domicil of the child in custody cases is due to the

fact that it is considered to be a determination of status which normally by the law of conflict is reserved to the state of domicil. This, however, emphasizes the parent and child relationship instead of the state-child relationship which exists between the child and sister state within which it resides. The latter is purely a personal matter and is dependent not upon domicil but upon residence. It is highly important to keep in mind the true theories for the exercise of jurisdiction. Essentially there are two: (1) that the court as a disinterested person determines *the personal right of the parents* with respect to the child; (2) that the court acts for the state as an interested party and provides for the best *welfare of the child.* Under the former theory, the state's interest is merely nominal for it is doing no more than to supply machinery for the peaceful settlement of a dispute. Under the latter, however, the state has a substantive interest in the decree since it is of prime importance to the state that a child residing within its boundaries be properly provided for. *When both parents are before the court and the child is residing within the state, it is evident that either theory is applicable.* (Emphasis ours). We may say that the court, having acquired jurisdiction over the persons of the parents, may then proceed to determine their individual rights, or that the state, in the exercise of its function as parens patriae, may act through the court to provide for the best interests of its subjects. The foregoing concept of jurisdiction is basic. It is not necessary to direct our attention to questions of the legal domicil of the child. This is clearly so where the award is merely a settlement of the legal rights of the parents, for it need only be shown that both parents received personal service. And in so far as the award is a regulation of the child's condition within the state, it is like the appointment of a guardian of the child's person, which is always a matter of local control. 80 U of Pa L Rev 712.

"Generally where a court of a state is passing upon its own jurisdiction to award custody of a child that is physically present, though domiciled elsewhere, it is likely to be motivated by the doctrine of parens patriae and to proceed to decide for itself what is for the best interests of the child.

"II. Jurisdiction of domestic court. a. In absence of outstanding foreign judicial award. 1. Child present in state (a) In general. (1) View asserting power.

"Sec. 3. Generally.

"Where there is no outstanding judicial award of custody by a foreign court the courts are nearly unanimous in holding that even though the children may be domiciled without the state, power in the court exists to make an award of custody of children present in the state in furtherance of the welfare of the children."

Following this last above quoted paragraph there are very numerous cases cited and discussed from various courts of the United States laying down the principle of law announced in the last above quotation.

"Sec. 4. Jurisdiction over both parents.

"Where both parents are before the court, it has power to award custody despite the fact that the child is domiciled in another state."

Cited are cases from Michigan, New Jersey, New York, Oregon and Washington. The note on page 20 of 4 A.L.R.2d, quotes from the opinion of the Supreme Court of Michigan in the case of Ex parte Peddicord, 269 Mich. 142, 256 N.W. 833, involving a habeas corpus proceeding, as follows:

"'* * * When petitioner filed his petition for a writ of habeas corpus all of the parties were in Michigan and within the jurisdiction of the Delta County Circuit Court. Petitioner having submitted to that court the issue of the custody of the child and invoked its jurisdiction without awaiting determination of the Indiana proceeding, cannot now complain of its lack of jurisdiction, but must abide the decision of the Michigan court.'"

On page 22 of 4 A.L.R.2d the annotation deals with the minority view as follows:

"(2) View denying power. Sec. 7. Generally. There is some authority in support of the view that a court does not have jurisdiction to award the custody of a child domiciled elsewhere even though such child is present in the state."

Under this view the annotator cites only one case from Iowa, one from Pennsylvania and an earlier case from Texas, Lanning v. Gregory 100 Tex. 310, 99 S.W. 542, 10 L.R.A.,N.S., 690, which was expressly overruled by the later Texas case of Wicks v. Cox, supra. On page 22 of 4 A.L.R.2d we also find the following:

"(b) Abduction of child into state. Sec. 8. Jurisdiction asserted. Even if the child has been abducted from the state of his domicil, it has been held that the courts of the state into which he has been brought have power to make a custodial award."

One of the cases cited and quoted from under this statement is White v. White, 77 N.H. 26, 86 A. 353, 355, wherein the court said:

"* * * In such case the child would not be chargeable with the conduct of the mother in bringing it into the state; and the mother's purpose, though fraudulent, should not be permitted to preclude the court from entertaining jurisdiction and determining what is for the child's welfare. If the rights of the mother and father, as respects each other, were alone involved, the court might decline to permit its jurisdiction to be thus invoked; but, as the rights of the child are also involved, no sufficient reason for adopting such a course can be perceived."

On page 24 of 4 A.L.R.2d the opposite view with reference to jurisdiction over abducted children is set forth as follows:

"Sec. 9. Jurisdiction denied. There is authority, however, that it is of no avail to the court's jurisdiction to bring a nonresident child into the state unlawfully."

Under this statement, however, the author of the annotation only cites two cases—one from Kentucky and one from New York.

In an opinion by Judge Cardozo of the New York Court of Appeals in the case of Finlay v. Finlay, 240 N.Y. 429, 148 N.E. 624, 626, 40 A.L.R. 937, we find that the plaintiff, a resident of St. Louis, Mo., filed an action against his wife, who was living in New York for judgment to regulate the custody of his infant children and to provide their custody for a portion of the year with him in St. Louis, Mo. and for the other portion of the year with his wife in New York. The action was not based upon the welfare or best interests of the children but was to have the court determine the rights of the husband and wife in their dispute as to custody. The court held that, as a procedural matter, the suit should be dismissed, but clearly indicated if the case had been properly brought by petition of habeas corpus or by petition to the Chancellor there was jurisdiction to award custody. Judge Cardozo said:

"We find no authority for the exercise of that jurisdiction through the medium of an action by one parent against the other. Except when adjudged as an incident to a suit for divorce or separation, the custody of children is to be regulated as it has always been in one or other of two ways: By writ of habeas corpus, or by petition to the chancellor.

"* * * The chancellor in exercising his jurisdiction upon petition does not proceed upon the theory that the petitioner, whether father or mother,

has a cause of action against the other or indeed against any one. He acts as parens patriae to do what is best for the interest of the child. He is to put himself in the position of a 'wise, affectionate, and careful parent', and make provision for the child accordingly. * * * He 'interferes for the protection of infants, qua infants, by virtue of the prerogative which belongs to the Crown as parens patriae.' * * * He (the father) invokes the jurisdiction of a court to settle a dispute. Equity does not concern itself with such disputes in their relation to the disputants. Its concern is for the child. * *

*"The jurisdiction of a state to regulate the custody of infants found within its territory does not depend upon the domicile of the parents. It has its origin in the protection that is due to the incompetent or helpless.* (Citing cases.) For this, the residence of the child suffices, though the domicile be elsewhere. * * * But the limits of the jurisdiction are suggested by its origin. The residence of the child may not be used as a pretense for the adjudication of the status of parents whose domicile is elsewhere, nor for the definition of parental rights dependent upon status. (Citing cases.) Parents so situated must settle their controversies at home. Our courts will hold aloof when intervention is unnecessary for the welfare of the child." (Emphasis ours.)

An examination of recent decisions of the Supreme Judicial Court of Massachusetts, the domicile of appellant, clearly indicates that they have held against the contention of appellant made here and that their recent rulings conform to our own opinion and would uphold the order of the trial court. The most recent decision from Massachusetts held that where a husband and wife are living apart from each other, though not divorced, the Massachusetts court has jurisdiction to award custody to either one of the parents, whether they be domiciled in Massachusetts or not, providing the child is residing within the jurisdictional limits of the Massachusetts probate court.

In the case of Welker v. Welker, decided in May 1950, 325 Mass. 738, 92 N.E.2d 373, 377, we find the following:

" * * * the Probate Court has jurisdiction to award the custody of a minor child to either parent or to a third person as it deems will be most conducive to the welfare of the child where the child is living within the territorial jurisdiction of the court, even if the child might have the domicil of his or her father at some place outside the Commonwealth".

See also Heard v. Heard, 323 Mass. 357, 82 N.E.2d 219.

█ █ Our court, from its earliest days, as shown by the opinion in Bustamento v. Analla, 1857, 1 N.M. 255, 261, has consistently held that in cases involving child custody the trial court's paramount concern is with the welfare of the child and not with the issues of the parents or other persons seeking custody of the child. This court has consistently recognized that the state is parens patriae and that the child's welfare and best interest must, be the paramount consideration for the court in custody cases. In the recent case of State ex rel. Day v. Parker, 55 N.M. 227, 230 P. 2d 252, 254, we said:

"In this jurisdiction the welfare of the child is the controlling consideration in determining custody."

See numerous citations given therein of cases decided by this court.

Having concluded that domicile is not necessary for a New Mexico court to exercise jurisdiction in awarding custody of minor children who are actually and physically present and living within the state, a further discussion of the point and argument made by appellant is not necessary but we deem it not out of place to discuss briefly other statements made by appellant in his brief in his effort to support his Point I.

Appellant relies upon the common law for his contention that the husband, being the head of the family, establishes the domicile and that such domicile necessarily is the domicile also of the wife and of any minor children. His authorities cited also rely upon statutes of states which modify the common law rule to a limited extent by allowing the wife to establish a separate domicile only in case she is legally justified in so doing by misconduct on the part of the husband which would be grounds for her filing an action for divorce or for legal separation. The appellant ignores the statutes of New Mexico with reference to grounds for divorce and with reference to awarding child custody where parents are separated or living apart.

█ In New Mexico, by statute 25–701, N.M. Statutes 1941 Annotated, one ground of divorce, and that most commonly used, is "incompatibility." Either spouse may bring a divorce in New Mexico on the ground of incompatibility and may secure a divorce upon such grounds without alleging or proving that the defendant is in any way guilty of any misconduct or is responsible for, or that his conduct or actions created such state of incompatibility. If the incompatibility be established by the evidence in the trial court a divorce may be granted without any determination as to whether either, both or neither of the parties is responsible for or caused the incom-

patibility. That is, it is not incumbent upon the plaintiff who brings the divorce proceeding upon the ground of incompatibility to show any misconduct or guilt against the defendant but it is only incumbent upon the plaintiff to establish by the evidence that a state of incompatibility exists regardless of whether it is anyone's or no one's fault.

This is the general rule, although we have held recently, in the case of Clark v. Clark, 54 N.M. 364, 225 P.2d 147, 21 A.L.R. 2d 1263, that though incompatibility itself cannot be pleaded by defendant by way of recrimination to a divorce action brought by plaintiff on the ground of incompatibility, nevertheless in cases of other defenses traditionally employed by way of recrimination, if pleaded, established and found to have resulted from actions of the plaintiff, the trial judge is not bound under the law to grant a divorce but has a discretion to say whether, notwithstanding such incompatibility, it shocks the conscience to hold the plaintiff entitled to a divorce. This case, in effect, merely holds that the defenses which heretofore have been traditionally employed by recrimination are still recognized by the court and it is within the discretion of the court to determine whether to grant the divorce on the ground of incompatibility if such recrimination exists.

▪ Under our statute, if incompatibility exists, a wife has grounds for divorce. If she has grounds for divorce it would necessarily follow that the law would not compel her against her will to continue to live with the husband and continue the marital relationship, but would allow her, justifiably, to leave her husband and set up a separate residence and domicile. If the incompatibility exists we believe there would be no legal compulsion upon the wife to continue to live with her husband until a divorce decree were granted, or even until a divorce proceeding was instituted by her. Where a ground of divorce, that is incompatibility, exists she is justified, under the law, in establishing a separate residence and domicile from that of her husband.

Appellant apparently ignores, in his brief, a very important statute of New Mexico dealing with parents and minor children. This statute is found at Sec. 35–102, N.M. statutes 1941 Annotated, and was originally passed in 1921 and reads as follows:

"Equal powers of parents—Custody of children.—The parents of a minor shall have equal powers, rights and duties concerning the minor. The mother shall be as fully entitled as the father to the custody, control and earnings of their minor child or children. In case the father and mother live apart the court may, for good reasons, award the custody and education of their minor child or children to either parent or to some other person."

This statute gives equality to both the father and mother as to powers, rights and duties concerning a minor and as to custody, control and earnings of the minor children. It is seen that this statute also provides that if the father and mother live apart the court may award custody of the minor children to either parent or to some other person. The father, therefore, when living with his family, has no greater control or authority over the children than the mother. When they live apart the court has authority to give the custody to either one or to some third party and this provision in no way has any qualification or condition that either parent be blameless for the separation or that they be permanently separated. Whenever they are not living together, for any reason, the court is authorized to determine and grant custody. When married people are separated and living apart necessarily the lives of children are materially affected. They are affected, not necessarily by the cause of the separation, but by the separation itself and in that case our state gives the court full power to determine and make an award of the custody of the minors, keeping in mind, as always, that which is paramount in these cases—the welfare and best interests of the child.

There is no denying that minor children, particularly those of tender age, are best cared for, and their welfare and interest is best promoted, while they live in the home of their parents and receive the kindness, love, affection and guidance of both the father and mother. However, married people having minor children separate and live apart and there is no legal power in the courts to compel them to live together and consequently in such situations, which are far from perfect for the best welfare of the minor children, the courts of the state are empowered, and are obliged when controversies arise concerning the custody of the children, to act for the state as parens patriae and determine what is for the welfare and best interests of the children under the circumstances and conditions existing, and make an award of custody based upon this doctrine.

Of course, all judicial judgments or orders awarding custody of minor children in New Mexico are subject to change or modification at any time upon a proper showing in court, by any person having an interest, that a change in conditions and circumstances has occurred which affects the welfare of the minor children. The judgment or order of custody is never permanent and final but is always subject to revision by the trial court as circumstances and conditions change or as the needs of the children may require.

Point II of appellant's brief is quoted as follows:

"It is for the best interests of the children, particularly the boy of eight

years, to have the love, affection, and guidance of his father, and that it is the natural right of the father (appellant), not being a wrongdoer in any respect, to afford said children his parental love, guidance, and care. Further, no evidence was offered proving or tending to prove the allegations set forth in the return and answer to the effect that appellant had treated the appellee in a cruel and inhuman manner, but on the contrary it appears that appellee was ready and willing to resume marital relations with appellant at any place up to the service of the writ of habeas corpus in these proceedings. Further, that the appellee and appellee's father are using the children of the parties as hostages in an endeavor to force the appellant to engage in the services of the appellee's father."

The questions presented in appellant's Point II have hereinabove been largely covered but it may be stated that the decisions of this court have held in child custody cases that the trial judge, who has had the opportunity to see and hear the father and mother or other parties asking custody of the minor children and who has had the children present in court and has seen and heard the witnesses in the case, is in a much better position than is this court to determine what is best for the welfare of the minors. The trial court has a wide discretion in the matter of awarding custody and such discretion of the trial court will not be interfered with unless it is shown there is a clear abuse thereof.

In Edington v. Edington 50 N.M. 349 176 P.2d 915, 917 we said:

"That the district court has a very wide discretion in the matter of awarding the custody of children has been so often held that it will suffice on the point to cite only one recent opinion of this court, Martinez v. Martinez, 49 N.M. 405, 165 P.2d 125. * * *

"The welfare of the child is the matter of primary concern, paramount to the wishes of parents. Both parties asked for the absolute care, control and custody of the child. The court had the decision to make of giving the custody of this child to either parent, or awarding the custody evenly between them. * * * "

In Mylius v. Cargill, 19 N.M. 278, 142 P. 918, 920 this court said:

"Without further commenting on the evidence, it will be sufficient to say that the trial judge saw and heard the parties and talked freely with the little girls, and, necessarily, is in much better position than we are to determine what is best for the immediate future of these minors. Only the grossest error could move this court

755

to overturn the careful judgment of a district judge in such cases."

Point II of appellant is without merit. The court, in its judgment, found and concluded that the appellee is a proper person to have the care and custody of the children and that it is for the best interests of the children that they remain in the custody of their mother and the custody was thereupon awarded to their mother, the appellee. These findings and conclusions and the order itself are supported by substantial evidence. There is nothing in the record to show that the action of the court was not for the best interest of the children.

Point III of appellant's brief is as follows:

"Assignment of error No. 9: the court erred in awarding the custody of the minor children to the appellee, giving to the appellant only the right to visit his children at the place of abode in this state selected by the appellee for the reason that the practical result is to deny completely to the appellant the right to see or visit his children for the reason his home and the domicile of the parties in the state of Massachusetts is upwards of two thousand miles distant. The appellant being a man of modest means and the expense of such a visit, plus the time away from his business, denies, for all practical purposes, the right to see

his children or determine whether or not they are being properly reared and cared for and denies to the children permanently the right to the love, affection, and guidance of their father."

This Point III seems all but abandoned by appellant as appellant's statement in the brief following the point reads:

"We think the court will take judicial notice that the foregoing assignment, both from a factual and a legal standpoint, sets forth self-evident truths and needs no argument or citation of authorities in support thereof."

We think that Point III made by appellant has been disposed of by what we have heretofore said in this opinion. With the children residing with their mother in New Mexico it is indeed quite a distance from the domicile of the appellant in Massachusetts but the children would be as far away from their mother in New Mexico if they were given into the custody of the father in Massachusetts. There would be equal difficulty of visitation inherent in the situation regardless of which parent was awarded custody.

The final order and judgment of the trial court entered on December 20, 1951 is affirmed.

And it is so ordered.

LUJAN, C. J., and SADLER, McGHEE and COMPTON, JJ., concur.