281 P.2d 140

In the Matter of the Adoption of Velva Joyce HELMS, a Minor.

Olan HELMS and Rosalie Helms, Plaintiffs in Error,

v.

Henry Isaac MEANS, Ruth Means, and the New Mexico Department of Public Welfare, Defendants in Error.

No. 5827.

Supreme Court of New Mexico.

March 7, 1955.

Frazier, Cusack & Snead, Roswell, for plaintiffs in error.

George L. Zimmerman, Carrizozo, for defendants in error.

SADLER, Justice.

The question submitted for decision is whether in an adoption proceeding pending in the district court of a given county, based upon written consent of the parents to the adoption of their infant child, the trial court may grant the parents' motion to withdraw their previous consent, and at the same time retain jurisdiction to declare the child a ward of the court and place it under the control and direction of New Mexico Department of Public Welfare, leaving temporary custody of the child with the adoptive parents pending further order of the court.

The proceeding originated by the filing of a petition for adoption in the district court of Lincoln County on August 18, 1953, entitled "Petition of Henry Isaac Means and Ruth Means to Adopt Velva Joyce Helms." It bears No. 6111 on the civil docket of the court. It discloses that petitioners are hus-

band and wife and have been residents of Lincoln County for twenty years; that the child was a female, born December 4, 1952, at Roswell, New Mexico, but living at the time in Ruidoso, Lincoln County, New Mexico, followed by an allegation that the petitioners were not related to the child.

The petition went on to disclose that the parents of the child were Olan Helms, 30 years of age, and Rosalie Helms, 29 years of age, husband and wife, both residents of Ruidoso, New Mexico. It further disclosed that the natural parents were in dire circumstances and the recipients of public welfare and alleged further the petitioners' desire for another child, since they were physically unable to have one of their own or procreate. A blank form attached to the petition giving consent of the natural parents to the adoption sought was duly signed and acknowledged by each of the natural parents.

The matter was duly referred to the New Mexico Department of Public Welfare and passed on to one of its child welfare workers for investigation. Thereafter, following a hearing before the court on November 5, 1953, stated to have been on the natural parents' motion for custody of the child during pendency of the proceeding, an order was entered declaring the minor child a dependent, neglected child and thereby made a ward of the court. The order gave temporary custody of the child to the adopting parents.

At the conclusion of the foregoing hearing the court made the following statement:

"The Court is going to find the child to be dependent and neglected and she will be made a ward of this Court. The Court is going to order the Welfare Department to make a detailed investigation into the background of the child's parents and what their mental conditions have been and are at the present, if possible, and also a detailed medical examination of this child. Pending these investigations the child will remain in the custody of Mr. and Mrs. Means."

The preamble to the taking of testimony at the November 5, 1953, hearing recites that petitioners were present in court and represented by their attorney, George L. Zimmerman, Esq., of Carrizozo, New Mexico, but that the natural parents were not present in court, though represented by C. C. Chase, Jr., District Attorney of the Third Judicial District within and for the county of Lincoln, having been previously appointed by the court to act in the capacity of amicus curiae. The infant child, subject of the adoption proceedings, was present in court.

Considerable testimony was taken at the hearing. Counsel for the natural parents seek to ignore this hearing on the claim that their clients were neither notified, nor present in court at the time thereof. Counsel

for petitioners, defendants-in-error in this court, retort that the hearing is not to be thus ignored because of the fact that, in final analysis, the proceeding is to be seen as one initiated by the natural parents themselves, stemming as it does, from their written consent to the adoption. Be that as it may, it is not decisive of the jurisdictional question paramount in the review before us.

Thereafter, there was filed in the proceeding under date of January 4, 1954, through their attorneys, Frazier & Cusack of Roswell, a motion by the natural parents seeking formally to withdraw their consent to the adoption. The motion was based upon the ground, that they did not comprehend the significance of the adoption petition at the time they signed their consent thereon. This motion came on for hearing before the court on February 8, 1954, following which and on March 30, 1954, the court filed its decision making findings of fact and conclusions of law.

In the decision, among other things, the court found that the motion to withdraw the consent for adoption, signed by the natural parents, should be granted; but, that the child did not have the proper parental care and supervision and should be made a ward of the court and placed under the care, control and direction of the New Mexico Child Welfare Department; and, further, that the natural parents should be restrained from interfering with the custody of the infant, Velva Joyce Helms.

The court went on to find that the parents of said child met while they were inmates of the institution for the insane at Las Vegas, New Mexico; that the mother of the child was pregnant at the time of the hearing, without a home of her own and was residing in Roswell, New Mexico, in the home of her mother who was employed full time; that two other children of the natural parents and an employed brother of the natural mother reside in the same home with the natural mother; and, further, that an older child of the natural parents died of malnutrition caused by the neglect of the natural mother. To make a long story short, the court found that the mother and father of the child were not fit and proper persons to have its custody and had been guilty of wilfully failing to maintain and support the child and of cruelty toward it; that the adopting parents were fit and proper persons to have custody of the child and were better prepared to provide superior advantages to the child which the natural parents cannot provide.

From all of the findings made, of which there were many others not recited, the court concluded that the statutory legal requirements for adoption set forth in New Mexico Statutes Annotated had been fully complied with on the part of the adopting parents; that the minor child was a dependent and neglected child within the intent and meaning of 1941 Comp. § 44–202, 1953

Comp. § 13–9–2. Finally the court ended its conclusions with the following, to wit:

"4. That this Court has jurisdiction in these proceedings to award the care and custody of the minor child to the New Mexico Department of Public Welfare or to the adopting parents pending final decision on whether the minor child should or should not be adopted.

"5. That this Court has jurisdiction to declare this minor child to be a ward of the Court.

"6. The consent of the natural parents of the child should (be) dispensed with pursuant to Section 25–224 of the New Mexico Statutes Annotated because of the deprivation of custody of the minor child by the Third Judicial District Court in proceedings under or like in substance to those prescribed by Chapter 85 of laws of 1917 (being Sections 44–201 to 44–211 inclusive, of the New Mexico Statutes Annotated)—being the law in New Mexico relating to dependent and neglected children.

"7. That the financial condition of the natural parents has no bearing upon their right to the care and custody of the child."

The foregoing findings and conclusions were followed by an order of the trial court entered on May 10, 1954, reading as follows:

"This matter having come on regularly for hearing on Motion of Olan Helms and Rosalie Helms, parents of the above Velva Joyce Helms, to withdraw the Consent to such Adoption and therein requesting the Court to dismiss the adoption proceedings and the Court having heard the testimony adduced by the Petitioners, Henry Isaac Means and Ruth Means, and also have heard the testimony of Rosalie Helms, and being otherwise fully advised in the premises doth find:

"1. That the Motion to withdraw the consent to adopt should be granted.

"2. That the child, Velva Joyce Helms, should be made a ward of the Court and placed under the control and direction of the New Mexico Child Welfare Department.

"3. That the parents, Olan Helms and Rosalie Helms, should be restrained from interfering with the custody of said Velva Joyce Helms.

"It is therefore ordered, adjudged and decreed, by the Court that the said Child, Velva Joyce Helms, be and she is hereby made a ward of this Court and placed in the control and under the direction of the New Mexico Department of Child Welfare and that temporary custody of this child is hereby granted to Henry Isaac Means and Ruth Means pending further order of this Court.

"It is further ordered, adjudged and decreed, that the parents, Olan Helms, and Rosalie Helms, be and they are hereby restrained from interfering with the custody of said Velva Joyce Helms, herein granted temporarily to Mr. and Mrs. Henry Isaac Means.

"Done at Las Cruces, New Mexico, this 7th day of May, 1954.

"/s/  W. T. Scoggin
"District Judge"

As can be gathered from a reading of the order, the court permitted the plaintiffs to withdraw their written consent to the adoption, made the infant a ward of the court, placing her under the control and direction of New Mexico Child Welfare Department, and gave her temporary custody to the defendants "pending further order of the court." In addition, it restrained plaintiffs from interfering with her custody. Thus, the adoption proceedings are left pending, the dismissal prayed for not having been granted. What and when further steps are to be taken looking to final decree, either denying or granting adoption, remains to be seen. No doubt, suing out of this writ of error has suspended everything awaiting our decision on the writ.

Possibly, we have expended unnecessary time in detailing, at the length we have, the factual and procedural aspects of this case, in view of the conclusion we are about to announce. But we think we have said no more than required to give an intelligent understanding of how the case developed into the tangled situation pictured by the record, at the time the plaintiffs sought to remove it into this Court for review on writ of error. The decisive fact is, however, that we are without jurisdiction to review the order complained of because wholly interlocutory in character and lacking completely the finality essential to a review of final judgments.

Counsel for defendants is not unmindful of this obstacle to review, though quite willing to have us pass upon the interlocutory order. Note this passage from his brief, to wit:

"The issue of whether the consent of the natural parents may be dispensed with is not yet before the court. There is no need to require the adopting parents to refile their petition and proceed under the dispensing provisions as a matter is in the Supreme Court on the jurisdiction of the lower court to award custody to someone other than the natural parents at this stage of the proceedings. The appeal is premature as to the adoption phase of the case which will require future and extended civil procedure, but the appeal is in order to test the jurisdiction of the lower court to award temporary and future custody of the minor child."

The case started out as an adoption proceeding. No decree either granting or refusing adoption has been entered, though one of adoption was inadvertently signed but quickly set aside. The trial court, however, notwithstanding objection of the plaintiffs that it lacked jurisdiction to do so, soon converted the action into one under 1953 Comp. §§ 13–9–1 to 13–9–11. To say the least, the court began to invoke the provisions of the statutes relating to neglected and dependent children, touching disposition to be made of the child's custody and care, pending final decision on the petition for adoption.

So the matter stood at time of suing out writ of error and still stands. It must appear obvious to all that we are without jurisdiction to pass upon the interlocutory order brought before us for review on writ of error. Nor is it appropriate at this time that we review the correctness of the trial court's action in attempting in an adoption proceeding to invoke the machinery of the Act relating to neglected and dependent children. This is a matter about which we now express no opinion. In closing, may we add that the welfare of this infant child, the innocent subject of the litigation, is the matter of greatest concern in whatever decision is finally reached regarding its permanent custody. Heirich v. Howe, 50 N.M. 90, 171 P.2d 312; New Mexico Department of Public Welfare v. Cromer, 52 N.M. 331, 197 P.2d 902; State ex rel.

Day v. Parker, 55 N.M. 227, 230 P.2d 252; Bassett v. Bassett, 56 N.M. 739, 250 P.2d 487; In re Adoption of a Minor, 79 U.S. App.D.C. 191, 144 F.2d 644, 156 A.L.R. 1001. Truly, the matter should be determined with all dispatch consistent with due consideration.

It follows from what has been said that the writ of error was improvidently granted and should be dismissed.

It is so ordered.

COMPTON, C. J., and LUJAN, McGHEE and KIKER, JJ., concur.