361 So.2d 936 (1978)
Ernest Roy SNELL, Sr., Plaintiff-Appellee,
v.
Phyllis Rose Tuminello SNELL, Defendant-Appellant.
Ernest Roy SNELL, Sr., et al., Plaintiffs-Appellees,
v.
Phyllis Rose Tuminello SNELL, Defendant-Appellant.
Nos. 13593, 13594.
Court of Appeal of Louisiana, Second Circuit.
July 6, 1978.
Rehearing Denied August 15, 1978.
Writ Refused October 10, 1978.
*937 Glen H. Smith, Shreveport, for appellant.
D. G. Tyler, Shreveport, for Ernest Roy Snell, Sr., Betty Kellett and Robert H. Snell.
Before PRICE, HALL and JONES, JJ.
En Banc. Rehearing Denied August 15, 1978.
*938 HALL, Judge.
In this case, a mother has been denied custody of her two small children for much too long a time. The children have been well cared for by a grandparent, to whom custody was originally awarded on a temporary basis at the beginning of this litigation, and in whom custody was continued in subsequent proceedings despite findings that the mother was fit and able to have custody. We reverse the most recent judgment of the trial court continuing custody in the grandparent, and award custody to the mother.
These proceedings began in October 1976 when Ernest Roy Snell, Sr. filed suit against his wife, Phyllis Rose Tuminello Snell, seeking a separation on the grounds of abandonment and custody of their small son and daughter, ages five and two. At the time the suit was filed, Phyllis Snell was in California where she had been visiting her mother for about two weeks, resting from the ordeal of financial and marital problems and the problems of coping with her young hyperactive son. The children were left with the paternal grandparents while Phyllis was away. A few days after the suit was filed, she returned from California and took her son from school to stay with her at her grandmother's home in Shreveport. The father, Ernest Roy Snell, Sr., paternal grandmother, Betty Kellett, and the paternal grandfather, Robert H. Snell, commenced a habeas corpus proceeding. Phyllis answered the suits denying the allegations of abandonment, reconvening for a separation on the grounds of constructive abandonment, and seeking custody of the children. The father of the children has never actually sought custody and the contest has been primarily between Mrs. Kellett and Mrs. Snell.
In December 1976, after trial of the custody matter, the trial court found that the mother "at this point in time," did not have the maturity and was not prepared to cope with the problems presented by the hyperactive son, and awarded custody of the children to the grandmother "until further orders of this Honorable Court." On the mother's appeal this court affirmed in June 1977. Snell v. Snell, 347 So.2d 511 (La. App.2d Cir. 1977).
In May 1977 Phyllis Snell, who moved to California to live with her mother after the original custody judgment, filed a rule to change custody. This rule and the merits of the separation proceeding were tried in June. The trial court found that Mrs. Snell's previous problems were due primarily to the influence of her husband and that "Phyllis has changed for the better . . She has demonstrated . . . that she is ready, willing and able to care for her children. . . At this point in time the Court can find no legal reason to continue depriving this mother of the custody of her children. It is in their best interests to be with their mother." These findings are fully supported by the evidence presented at the lengthy trial. Judgment was rendered awarding custody to the mother, but, in spite of the findings of the court quoted above, conditioning the granting of physical custody of the children on the mother's compliance with three conditions established by the court: (1) that the mother continue psychiatric treatment of the son and herself; (2) that she obtain an apartment for her and the children; and (3) that she enroll the son in Creative Frontier School, a private day care center specializing in learning disabilities. Judgment was also rendered granting a separation on the grounds of mutual fault.
The mother immediately offered evidence of compliance with the conditions, which was not accepted by the trial court. The grandmother moved for a new trial and opposed the mother's efforts to satisfy the court that the conditions had been met. After hearings in the early part of August, the court was still not satisfied, ordered physical custody to remain with the grandmother, and continued the entire matter for hearing on September 20. The mother applied to this court for writs which were denied. She also applied to the Supreme Court for writs, which were denied with the comment "It is understood that the trial judge will make a determination of the *939 issue of compliance with the conditions of custody by the mother on September 20, 1977." One justice dissented from the denial, commenting perceptively, particularly in view of later developments, that "there is no shred of evidence in this record, nor contention made by the parties or the judge, that could support the continued refusal to permit this mother to regain the custody of her children. It is a great injustice to separate a mother from her children without good reason, and a greater injustice to perpetuate the error, once discovered. I would grant the writ, reverse the ruling of the trial court, and order the children surrendered to the mother immediately."
On September 20, after considering depositions of the mother and several persons living in California relating primarily to whether the mother had actually obtained an apartment, the trial court found there were conflicts in the testimony which led the court to conclude that "deliberate fraud and deceit" had been perpetrated on the court by Mrs. Snell and others. The trial court concluded she "is not morally capable of taking care of these children, if she attempts to commit such a fraud on the Court." After further procedural skirmishing, a judgment was signed in January 1978 which had the effect of continuing custody in the grandmother, from which judgment the mother appealed. On appeal she urges error in not granting her unconditional custody of the children and in granting the separation on grounds of mutual fault instead of her husband's constructive abandonment.
We hold:
(1) It is usually in the best interest of a child for custody to be vested in the child's natural parent. In a contest between a parent and a nonparent, custody must be awarded to the parent unless the parent is shown to be unfit or incapable of caring for the child or has forfeited parental rights. Wood v. Beard, 290 So.2d 675 (La.1974).
(2) The "double burden" rule does not apply in this case where the initial award of custody to the grandmother was temporary in nature. DeCelle v. DeCelle, 313 So.2d 634 (La.App.2d Cir. 1975).
(3) The evidence fully supports the trial court's findings made after trial in June 1977 that the mother was ready, willing and able to care for her children, that there was no legal reason to continue to deprive the mother of the custody of her children, and that it was in the best interest of the children to be with their mother.
(4) In view of these findings, the conditions established for the actual physical change of custody were not justified and amounted to an abuse of the trial judge's discretion. Even if the conditions were originally justified, satisfactory evidence of substantial compliance with the conditions, including a statement from a psychiatrist, a statement from the school, and a copy of a lease, was presented immediately after the June ruling and again in August. There was no reasonable basis for requiring the mother to go back to California, personally obtain and move into the apartment, and personally enroll the child in the special school, prior to the physical change of custody. It is to be noted also that custody of both children was subject to the court-established conditions although the conditions related almost solely to the care of the hyperactive son.
Unique circumstances may warrant unique custody decrees calling for closer judicial supervision than that normally employed. Morris v. Morris, 350 So.2d 971 (La.App. 2d Cir. 1977); Edisen v. Edisen, 236 So.2d 528 (La.App. 4th Cir. 1970); 297 So.2d 787 (La.App. 4th Cir. 1974). See also Lloyd v. Lloyd, 313 So.2d 854 (La.App. 2d Cir. 1975); Sachse v. Sachse, 150 So.2d 772 (La.App. 1st Cir. 1963). The circumstances warranting such supervision, however, are usually extreme. The evidence in this record does not establish such circumstances.
(5) The testimony contained in the depositions filed at the September 20 hearing, while containing some minor conflicts, does not support the trial court's finding of fraud, deceit, or moral unfitness. To the *940 contrary, the testimony further supports the efforts of the mother to obtain a place to live in compliance with the conditions established by the court. In any event, the entire matter of the apartment is so minor and insignificant in relation to her right to have the children with her and the children's interest in being with their mother, that it cannot possibly serve as a basis for continuing to deprive the mother of custody.
(6) The motion for new trial filed by the grandmother seeking to overturn the June 30, 1977 judgment on the rule for change of custody did not have the effect of suspending the delays for appealing the judgment granting a separation on the grounds of mutual fault. Neither of the parties to the separation suit, Mr. or Mrs. Snell, applied for a new trial as to that judgment and it became final long before this appeal was taken on February 8, 1978. Thurman v. Star Electric Supply, Inc., 283 So.2d 212 (La.1973); Payton v. Aetna Life and Casualty Company, 299 So.2d 489 (La. App. 4th Cir. 1974), writ refused 302 So.2d 617 (La.1974); State, Department of Highways v. D & J Realty Co., 245 So.2d 465 (La.App.2d Cir. 1971), writ refused 258 La. 583, 247 So.2d 396 (1971); LSA-C.C.P. Art. 1971. Accordingly, the issues concerning the grounds on which the separation judgment was granted may not be considered on this appeal.
For the reasons assigned:
(1) Insofar as custody of the children, Ernest Roy Snell, Jr. and Jennifer Michelle Snell is concerned, the judgment of the district court is reversed and set aside;
(2) There is judgment in favor of Phyllis Rose Tuminello Snell and against Ernest Roy Snell, Sr., Betty Kellett and Robert H. Snell, granting the immediate and unconditional care, custody and control of the children, Ernest Roy Snell, Jr. and Jennifer Michelle Snell, to their mother, Phyllis Rose Tuminello Snell;
(3) The case is remanded to the district court for such further proceedings as may be appropriate in connection with Phyllis Rose Tuminello Snell's demands for child support or other ancillary matters; and
(4) All costs are assessed to appellees, Ernest Roy Snell, Sr. and Betty Kellett, in solido.