390 So.2d 266 (1980)
Edwin LE BOUEF, Jr., Plaintiff and Appellee,
v.
Julie Ann FONTENOT, Defendant and Appellant.
No. 7774.
Court of Appeal of Louisiana, Third Circuit.
October 8, 1980.
Rehearing Denied December 1, 1980.
*267 Benjamin Burns, Lafayette, for defendant and appellant.
Wade A. Mouton, Kaplan, for plaintiff and appellee.
Before CULPEPPER, SWIFT and DOUCET, JJ.
CULPEPPER, Judge.
This is a suit to change child custody from the mother to the father. The plaintiff, Edwin Le Bouef, Jr., is the father of the nine year old child, Brian D. Le Bouef. Defendant is Julie Ann Fontenot, mother of the child. The trial judge left custody with the mother, but he ordered that the child remain within the jurisdiction of the court until further ordered. The defendant mother appeals from that portion of the judgment restricting the child's place of residence.
Edwin Le Bouef and Julie Ann Fontenot were married on March 9, 1970 and resided in Kaplan, Louisiana. After only two weeks, they separated and never reconciled. Brian was born in August, 1970. Julie lived in Kaplan with her family until Brian was about a year and a half old. She then moved to the Lafayette area.
In May of 1975, Edwin obtained a final divorce from Julie, and in those proceedings Julie was granted custody of Brian. Immediately thereafter, Julie married Charles Randy Judice. She, Brian and Charles Judice lived together in Lafayette from 1975 to 1977. Brian began the 1977 school year in Breaux Bridge, but, in October, Julie left Charles Judice and she and Brian returned to Kaplan, where they lived with her stepmother. Julie worked at the Kaplan Hospital, and Brian finished the school year in Kaplan. During that year, Edwin assisted in supporting Brian.
Edwin lived in Kaplan and worked offshore. Residing with him was Judy Lee Price, whom he referred to at trial as his wife. Although they have never married, Edwin introduced Judy as his wife in the community, and Judy wore a wedding band. Julie testified at trial she knew Edwin and Judy were not married but assumed they planned to marry.
Brian began the 1978 school year in a school referred to as the "Judice School." In November, 1978, Julie moved back to the Lafayette area to take a better paying job caring for an invalid friend. Julie lived with her aunt in Breaux Bridge, but it is not clear from the record if Brian lived there with her.
Sometime in December of 1978, Julie, who was a Catholic, decided to become a missionary in the Pentecostal Church and to move to California. She was concerned about Brian, who was doing poorly in the Judice School. She discussed with Edwin *268 the idea of leaving Brian with him to finish the school year in Kaplan.
On December 21, 1978, Julie took Brian to the home of Edwin's aunt and had a meeting with Edwin and Judy. According to the testimony of both Julie and Judy Lee Price, Julie proposed that Brian remain in Kaplan to finish the school year. They all agreed, and in January of 1979, Julie moved to California.
Upon arriving in San Diego, California, Julie rented a room in the home of the Raymond family, who were members of Julie's church, the First United Pentecostal Church. Her first job in California was in a donut shop. After about four months, she began working in the Norwood Convalescent Hospital. After four months there, she began working for the State of California in a nursing program for the aged called "REMEDY."
At first, Julie regularly telephoned Brian. Subsequently, Edwin refused to allow Brian to receive more calls from his mother, because he believed her admonitions to the boy to read the Bible caused him to neglect his school work. In May of 1979, Julie wrote Edwin of her intent to return for Brian. On May 29, 1979, Edwin filed this rule. Julie was served in California. She returned to Kaplan for the court proceedings, submitting herself to the jurisdiction of the court. The trial was on October 22, 1979.
Plaintiff did not allege that defendant is unfit for custody. He alleged and testified that in December of 1978 defendant delivered the child to him and advised him that she could no longer properly care for the child and asked plaintiff to assume custody. Also, plaintiff testified the child wanted to stay with him, was doing well in school, had friends and family in the area and was well adjusted to his present environment. He thought it would be harmful to move the child again, especially if the child was moved to California away from all of his friends and family to a strange new environment.
Defendant testified that if she received custody she planned to move to California where she would rent a room for a short time from the Raymond family until she could "get a place of my own" near a school for Brian.
Near the conclusion of the trial, we find the following testimony which is pertinent to the issue on appeal:
"BY THE COURT:
"I have just a couple of questions.
"Originally you stated that you went to California because you couldn't stand to be so close to your son and not have him with you, is that correct?
"Correct.
"BY THE COURT:
"Also you made a second statement, however, to the effect that you went to California because you were seeking, I think the will of God?
"A. Yes.
"BY THE COURT:
"Suppose the Court would continue the custody with you, but say that you could not remove the child from Louisiana, would you return to Louisiana to live with the child?
"A. At this point?
"BY THE COURT:
"Yes.
"A. I would do anything to have him with me; I've been too long without him.
"BY THE COURT:
"Okay. I have no further questions."
After the judgment in the present case was rendered and signed on November 28, 1979, the defendant filed in the record certain affidavits as to her present circumstances in California and her desire to remain there, despite her statement to the trial judge that she would be willing to remain in Louisiana. These affidavits dated in December of 1979, were not considered by the trial judge, are not properly part of the record and cannot be considered by us on appeal.
Defendant argues on appeal that the portion of the judgment, restricting the child's residence to the jurisdiction of the Fifteenth Judicial District Court until further *269 orders of the court, is an abuse of the trial judge's discretion under LSA-C.C. Article 157. That article provides that in case of divorce the trial judge shall award custody to the mother or the father "in accordance with the best interest of the child." Defendant also argues at some length that such a restriction on the movements of the mother and the child is an infringement upon their constitutional rights of movement from one state to another.
The rule stated in Civil Code Article 157 and established in our jurisprudence, Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971), is that in custody cases the paramount consideration is always the best interest of the child. Although restrictions on custody and court supervision of custody should not be employed except in unusual circumstances, the court may order such if the circumstances require them. Snell v. Snell, 361 So.2d 936 (La.App.2d Cir. 1978); Morris v. Morris, 350 So.2d 971 (La.App.2d Cir. 1977); Edison v. Edison, 236 So.2d 528 (La.App.2d Cir. 1970); Lloyd v. Lloyd, 313 So.2d 854 (La.App.2d Cir. 1975); Sachse v. Sachse, 150 So.2d 772 (La.App. 1st Cir. 1963); Pattison v. Pattison, 207 So.2d 397 (La.App. 4th Cir. 1968); Pace v. Pace, 372 So. 4th 775 (La.App. 4th Cir. 1979).
The trial judge did not give reasons for his judgment. However, from a reading of the transcript it is apparent he was deeply concerned as to how the mother could care for the child in California. The mother's history is unstable. She lived with her first husband, the plaintiff in these proceedings, for only two weeks and then left him to return to her family in Kaplan. She lived with her second husband for only about one and one-half years and then moved back to Kaplan. In December of 1978, when she decided to move to California as a missionary for the Pentecostal Church, she left her eight year old child with the plaintiff, where he remained for about nine months until the trial of this case. In California, plaintiff did not live a stable life during this nine months. She first worked in a donut shop and lived with the Raymond family, a home occupied by four children and two adults. She later worked in a convalescent hospital. At the time of trial, she had been working in a nursing program for the aged for about one month. She testified that if she received custody she planned to return to California to this job, rent a room from the Raymond family for a short time and then secure a place of her own. On her meager wage of $2.90 per hour, $272 per month, this would be very difficult.
It is obvious the trial judge doubted that the mother could carry out her plans in California, although well intentioned. He undoubtedly considered it would be much better, at least for the present, if the mother remains in the jurisdiction of the district court where her family and the plaintiff and his family live and can be of assistance in caring for the child and furnishing a stable environment for both the mother and the child.
In the final analysis, our decision rests on our extreme reluctance to second guess the trial judge in a child custody case as close as this. He had to make a difficult decision. The father is living in concubinage in the child's presence. The judge had doubts about the mother's ability to furnish a stable environment for the child without further restriction or supervision by the court. We rely strongly on the rule that in custody cases the trial court's decision is given great weight and should not be overturned unless there is a clear abuse of discretion, Cleeton v. Cleeton, 383 So.2d 1231 (La.1980). We find no clear abuse of discretion in this case.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendant-appellant.
AFFIRMED.