424 So.2d 1228 (1982)
Mary Sandra Guidry GRIFFIN
v.
Samuel Paul GRIFFIN, Jr.
No. 82 CA 0560.
Court of Appeal of Louisiana, First Circuit.
December 21, 1982.
*1229 C. Berwick Duval II, Houma, for plaintiff and appellant.
William F. Bologna, New Orleans, for defendant and appellee.
Before LOTTINGER, COLE and CARTER, JJ.
COLE, Judge.
The issues in this custody case are whether or not the trial court erred in refusing to change the child custody from the mother to the father and in ruling the child cannot be taken out of the jurisdiction of the court without its permission.
The facts giving rise to this litigation are as follows. The parties were married in July of 1972 and a son, Samuel Paul Griffin, III (Sammy) was born in November of 1974. The couple separated in May of 1975 and the marriage was terminated by judgment of divorce rendered September 19, 1977. Permanent custody of the child was granted to the mother, Mary Griffin. Various rules were filed subsequently, concerning visitation rights of the father. In February of 1982 Samuel Griffin filed a rule to have the custody changed from Mary Griffin to himself.
A hearing was held on the matter and the following facts revealed. Defendant-in-rule, Mary Griffin, admitted to living with three men for certain periods since her separation from her husband. The child resided with her during this time. In November of 1980 she moved in with the third man, Michael Bangs, and in December of 1981 a child was born of this union. Sometime prior to February of 1982 she and Mr. Bangs decided to move to Washington state where they both had allegedly secured jobs. Upon learning of this plan, Mr. Griffin filed the rule at issue here. Shortly thereafter, Mrs. Griffin married Mr. Bangs. She admitted at trial part of the reason she and Mr. Bangs married at that time was to improve her chances of retaining custody of Sammy.
*1230 After hearing the evidence the trial court rendered judgment in favor of Mary Griffin as to the custody matter but held she was prohibited from removing the child from the jurisdiction of the court without specific authority from the court. Both parties have appealed thus raising the aforesaid two issues. Plaintiff-in-rule, Samuel Griffin, argues the court erred in continuing custody in Mary Griffin. Defendant-in-rule argues the court erred in refusing to allow her to remove the child from the jurisdiction of the court without its specific permission.
We note in a child custody case we are to give great weight to the determination of the trial judge and shall overturn a decision only when there is a clear abuse of discretion. Cleeton v. Cleeton, 383 So.2d 1231 (La.1980). We find no abuse of discretion in this case as regards the custody issue but we do find an abuse as regards the prohibition from removing the child from the jurisdiction of the court.
The appropriate standard in cases dealing with change of custody is set forth in La.Civil Code art. 157. The article states in pertinent part "... custody of the child... shall be granted to the husband or the wife, in accordance with the best interest of the child...." The best interest of the child is now the sole consideration in awarding custody initially or in changing custody. Bordelon v. Bordelon, 390 So.2d 1325 (La. 1980).[1]
In support of his argument that it would be in the best interest of the child to be under his custody, plaintiff-in-rule alleges Mrs. Griffin and her current husband used marijuana in the presence of the child, who was seven years old at the time of the hearing. Mrs. Griffin denied using marijuana in the presence of the child and stated she had ceased using the drug altogether about a year and a half before the hearing. Michael Bangs corroborated this and stated he too had ceased using marijuana several months prior to the hearing. Both denied allegations they had cultivated marijuana in their yard.
Samuel Griffin admitted to living with his current wife for five years before their marriage in 1980. Both admitted to using marijuana at one time but stated they had not done so in six or seven years. He admitted he had filed the custody rule only when he learned of the plan to remove the child from the state. He said he did so because he felt he could not exert any influence over the child if he did not live nearby and because he felt the mother could not give the child the proper upbringing.
Several witnesses were called on behalf of Mary Griffin, each testifying they knew her to be a good mother to the child and felt the child was very happy in his current family situation. Dr. Marsha Redden, an expert in child psychology, testified she had spent one hour and twenty minutes testing and talking with the child. She felt the child was well adjusted, enjoyed a very close relationship with his mother and was very fond of his half-sister. In one test which involved the child drawing pictures, the child depicted Michael Bangs as his father. She found the child loved his biological father, Samuel Griffin, but expressed some concern about not being able to please him. Concerning the pending move to Washington, she said the child seemed to be looking forward to it. The child expressed anxiety about the possibility of being separated from his mother.[2]
Plaintiff-in-rule argues Mrs. Griffin's past history of living with different men makes her an unfit mother, citing Schexnayder v. Schexnayder, 371 So.2d 769 (La. 1979), rehearing denied 1979. We find Schexnayder easily distinguishable on its facts. The mother in that case began having an affair with a man of a different race *1231 several months before she separated from her husband. Her conduct was notorious and open and the entire community was aware of her affair. The evidence showed she often neglected the needs of her children and husband so she could meet her paramour at night. During this period she was admonished by her parents to end the affair but the affair continued. In the present case there is no evidence before us to suggest the activities of Mrs. Griffin were in any way "scandalous." Although she admitted to living with different men, she was not married at the time and we find no evidence her activities caused any stir in the community or in any way embarrassed her child.
While we are aware Mrs. Griffin's past behavior has been far from exemplary, we do not find her to be an unfit mother. Recent jurisprudence has developed a "reformation rule" which mandates a mother is not considered unfit simply because she has had an adulterous relationship, so long as she has reformed, either by ceasing the relationship or marrying the paramour. See Fulco, supra, and Monsour v. Monsour, 347 So.2d 203 (La.1977). Mr. Griffin insists the reformation rule has no application to this case because Mrs. Griffin admits having relationships with more than one man. Rather, we feel we must look to the totality of the circumstances to determine whether Mrs. Griffin has "reformed."
The evidence showed at the time of the hearing she had been living with Mr. Bangs for approximately a year and a half and had been married for about a month. The child born to them was then four months old. They planned to move to Washington state as a family in order to enjoy better jobs. We find these factors indicate a fairly stable home environment and an effort by Mrs. Griffin to "settle down."
Aside from the considerations of Mrs. Griffin's "reformation" we are convinced it is in the best interest of the child to remain in the custody of the mother. Mrs. Griffin has apparently had complete responsibility for raising the child since the separation from her husband in 1974 when the child was only five months old. Sammy is a straight-A student and according to the psychologist is happy and well-adjusted. Although we do not condone Mrs. Griffin's past behavior, we note her living arrangements have apparently had no ill effects upon her son. A somewhat similar situation was presented in Cleeton, supra. There the court remarked at page 1236 as follows:
"To change the custody of these girls would punish their mother for past behavior when there is no proof of a detrimental effect on her daughters. An award of custody is not a tool to regulate human behavior. The only object is the best interest of the child. LSA-C.C. art. 157. The trial court correctly decided in favor of stability, noted that the children have prospered, and gave custody to the parent most intimately involved with their care."
Since there is no evidence Mrs. Griffin's behavior has harmed the boy, we feel we would be doing little more than punishing Mrs. Griffin (and the child) if we were to order him removed from his mother's custody.
For these reasons, we affirm that portion of the judgment which granted Mrs. Griffin custody of Sammy.
We now consider whether or not the court erred in prohibiting Mrs. Griffin from removing the child from the jurisdiction of the court without its permission. A review of the case law reveals the trial court has the discretion to allow or to disallow the child's removal from the jurisdiction of the court. Pattison v. Pattison, 208 So.2d 395 (La.App. 4th Cir.1968), writ refused 1968; Sachse v. Sachse, 150 So.2d 772 (La.App. 1st Cir.1963). The standard when making such a decision is the same used in custody matters in general, i.e., "the best interest of the child." Sachse, supra. A more recent case has recognized a custodial parent's right to remove the child if there is "good reason" for the move and the move is in the best interest of the child. Broomfield v. Broomfield, 283 So.2d 839 (La.App. 2d Cir.1973).
*1232 Plaintiff-in-rule relies on the case of Le Bouef v. Fontenot, 390 So.2d 266 (La. App. 3d Cir.1980) in which the court denied the mother the right to take the child from the jurisdiction of the court. The facts of the case are entirely different than the facts at hand. In Le Bouef the mother had separated after only two weeks of marriage. Her history showed she moved around a great deal and had left the child with the father at one time. Her reason for taking the child from the jurisdiction of the court was because she wanted to be a missionary in California. The court denied the move because of its concern about her unstable history and her ability to provide for the child.
To the contrary, the mother in this case has shown no such pattern. Other than her admitted involvement with the three men, she has no past history of "instability." She desires to move to Washington state, not by herself, but with her husband and their daughter. The move is prompted because of job opportunities for her husband, who is an oilfield worker. She stated she too had a job awaiting her in Washington. Her husband's family resides there. We find she has "good reason" to move to Washington state, and under the present circumstances it is in the best interest of the child to be with his mother, his half sister, and his stepfather.
We note here we are generally in favor of the parent granted custody enjoying full custodial rights unless there is some reason to set limits. The judge apparently decided it was in the best interest of the child to be under the care of his mother and therefore granted her custody. But this right of custody is a rather limited right if Mrs. Griffin can enjoy it only within the judicial boundaries of the thirty-second judicial district. In today's society it is simply unrealistic to expect an individual to remain within one small geographic area for the remainder of his or her life. The Pattison court recognized this problem and stated as follows at page 396:
"In our highly mobile society, it is usually unrealistic to demand that a parent granted custody of the children be confined in a certain geographical area during their minority. We take judicial cognizance of the fact that men and women are readily subject to job transfer in our society and equity demands that they should be free to go where their best opportunities lie and pertinent to this case, that a woman who remarries should be free to go to the home which her new husband provides for her."
We agree with these comments and can find no legitimate reason for the court's refusal to allow Mrs. Griffin to take the child to Washington.
In Broomfield, supra, the custodial parent wanted to take the child to New York primarily for economic reasons. The court noted that although this move would "seriously impair the father's inherent right of visitation, this factor must be subordinated to the rights of the custodial parent to be reasonably unrestricted in selecting a place of residence for economic and justifiable personal reasons."
We are aware in the present case the visitation schedule previously fixed by the court (involving alternate weekends and major holidays) will have to be modified severely to accommodate the geographical distance between the parties. We remand the case to the trial court for the determination of such a schedule. Although Mr. Griffin's visitation rights are regrettably "seriously impaired," an adjusted visitation schedule should allow periods of contact with his son to be structured to compensate for the geographical detriment.
For the above reasons, that portion of the judgment granting custody to defendant-in-rule, Mary Sandra Guidry Griffin, is affirmed. We reverse that portion of the judgment prohibiting the removal of the child, Samuel Paul Griffin, III, from the geographical limits of the thirty-second judicial district.[3] We remand to allow the *1233 trial court to modify that portion of the judgment relevant to visitation privileges, such modification to be consistent with the views herein expressed and with existent circumstances.
Costs of this appeal are to be paid by Samuel Paul Griffin, Jr.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
NOTES
[1] In light of certain amendments to La.Civil Code 157, the Bordelon case disapproved of the multiple considerations for a change of custody as previously set forth in Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971).
[2] While we realize the value of this testimony is somewhat limited due to the fact it was based upon a rather short interview, we feel it deserves some weight as corroborating the testimony of the lay witnesses.
[3] The judgment does not specifically state the child may not be removed to Washington state but common sense dictates the court was prohibiting such a move. The record indicates the matter of moving to Washington was fully addressed at trial and the parties have raised it as an issue on appeal.