355 P.2d 123

**Cristina Amador URZUA, Plaintiff-Appellant,**

v.

**Ramon URZUA, Defendant-Appellee.**

No. 6630.

Supreme Court of New Mexico.

Sept. 8, 1960.

W. C. Whatley, Las Cruces, for appellant.

Dan Sosa, Jr., Las Cruces, for appellee.

COMPTON, Chief Justice.

The sole question presented is whether the trial court, in a divorce action, abused its discretion in awarding custody of a minor child of the parties to the plaintiff mother, an American citizen residing in Las Cruces, New Mexico, but allowing the defendant father, a Mexican citizen residing in Mexico, D. F., in addition to reasonable visitation rights, the authority to take the child to Mexico during the summer months each year upon posting of bond to assure the return of the child to New Mexico.

It has long been the rule in this jurisdiction that the trial court has a wide discretion in the matter of awarding the custody of children in divorce actions; and, in this regard, the welfare of the child is the primary consideration in making the award. Bassett v. Bassett, 56 N.M. 739, 250 P.2d 487; Edington v. Edington, 50 N.M. 349, 176 P.2d 915; Martinez v. Martinez, 49 N.M. 405, 165 P.2d 125. While this discretion, however, is a judicial one and is subject to review, Martinez v. Martinez, supra, we need only determine whether there is substantial evidence in the record to support the decision. Bassett v. Bassett, supra; 67 C.J.S. Parent and Child § 13(h). See also Ryan v. Scoggin, 10 Cir., 245 F.2d 54.

The mother, appellant here, first cites the case of Baer v. Baer, Mo.App., 51 S.W.2d 873, 878, as authority for her argument that custody of a minor child should not be granted to a nonresident unless it is shown that the welfare of the child will be greatly benefited. We are in accord with this well-accepted principle of law but we note that even the Missouri court, in applying this principle to the facts of the case, went on to say:

"* * * However, the obstacle of nonresidence is not to be regarded as an insuperable one; and notwithstanding the fixed policy of the courts, the removal of a child will nevertheless be permitted in those instances where it.

is made clearly to appear to the court that the best interests of the child itself will be thereby subserved. * * *

\* \* \* \* \* \*

"Were the boy of tender years, our conclusion might well be different; but he is now well into his twelfth year, and at the impressionable age when a boy begins to escape from the feminine influence of his mother, and to require a father's guiding hand and supervision. Neither sort of influence is safely to be dispensed with in its entirety, as the history of civilization has taught; both should concur to produce the best results; and the learned trial judge, in the discharge of the delicate duty with which he was confronted, has attempted to work out a plan whereby the boy may attain his manhood under conditions as nearly approximating those of the normal home as the divorce of the parents will permit * * *."

The trial judge in the instant case stated:

" * * * I do not think at this time it would be for the best interests of the boy to be taken to Mexico City, especially without his mother, but in the next year or two I think it is going to be self-evident that the boy is going to need a father's influence somewhat. He is going to need a firm hand, and he will be ten this November, if these dates are correct. Especially when he gets around twelve he is going to start that

period in life where the father is needed very greatly. * * *"

The remarkable similarity between the quotation from the Baer case and the trial judge's own statement, after firsthand observation of the parties, impresses us that the best interests of the child properly motivated the court to rule that the child could be removed from this jurisdiction for periodic visits with the father. See also Pugh v. Pugh, 133 W.Va. 501, 56 S.E.2d 901, 15 A.L.R.2d 424 and the extensive annotation appearing with the A.L.R. citation.

The case of People ex rel. Choolokian v. Mission of Immaculate Virgin, 192 Misc. 454, 76 N.Y.S.2d 509, 514, is cited with considerable reliance by the mother as being very close on its facts with the case at bar. Factually, we think the above case is far from being a comparable one. There, in addition to finding the father a poverty-stricken illiterate who was unable to care for the minor children, the New York court declined to allow the children to be taken by their father to Soviet Armenia on the theory that the privileges of their American citizenship would be forever lost because of the remote chance that they "might some day before their twenty-third birthday be able to escape from Armenia and return to the United States." The conditions existing with regard to Soviet Armenia, it seems to us, can hardly be compared with those existing between the United States and our sister republic to the

south, with whom we have maintained a cordial relation and an unbroken spirit of comity for more than a century.

■ Further, loss of American citizenship, under the conditions present here, is controlled by 8 U.S.C.A. § 1482, which states:

"A person who acquired at birth the nationality of the United States and of a foreign state and who has voluntarily sought or claimed benefits of the nationality of any foreign state shall lose his United States nationality by hereafter having a continuous residence for three years in the foreign state of which he is a national by birth at any time after attaining the age of twenty-two years unless he shall—

"(1) prior to the expiration of such three-year period, take an oath of allegiance to the United States before a United States displomatic or consular officer in a manner prescribed by the Secretary of State * * *."

Under the foregoing provision, the removal to a foreign country of one born an American citizen does not divest him, during his minority, of such citizenship and he can lose it only by his voluntary act subsequent to attainment of majority. See Application of Bernasconi, D.C.Cal., 113 F.Supp. 71, where the minor was prevented, due to wartime conditions, from choosing between American and foreign citizenship and the court held United States citizenship was not forfeited since the continued foreign residence beyond the statutory deadline was not a voluntary act. Under the circumstances prevailing here, this child's citizenship can only be determined by his own voluntary act following his attainment of majority.

■ The mother refers us to the record where testimony was introduced that the child suffered from some type of intestinal disorder between 1948 and 1952 when he was less than five years of age. But there is no evidence that the child is susceptible to such disorders or that conditions in Mexico City would be detrimental to his health in any way. To the contrary, there is evidence that the father makes a better than average income and lives in a good residential area. We can also take judicial notice that Mexico City is one of the hemisphere's largest cities and that many Americans live there permanently. Moreover, there is testimony that the father can and will adequately maintain and care for the child during the visits with him in Mexico.

While the provision requiring the father to post a suitable bond before being allowed to remove the child from this jurisdiction does not in itself guarantee that the father will return the child to the mother, we feel this is an appropriate safeguard to be imposed at the discretion of the trial court after consideration of the various

factors present in the case. Requiring security from a nonresident custodian is not a new concept in law as will be noted from the cases collected in the annotation of the subject at 15 A.L.R.2d 470, § 12.

 Judicial discretion is a discretion which is not arbitrary, vague or fanciful, or controlled by humor or caprice, but is a discretion governed by principle and regular procedure for the accomplishment of the ends of right and justice. Pankey **v.** Hot Springs Nat. Bank, 42 N.M. 674, 84 P. 2d 649. Speaking for the court in the case of Bassett v. Bassett, supra [56 N.M. 739, 250 P.2d 496], Mr. Justice Coors summarized our view of this case:

"* * * the trial judge, who has had the opportunity to see and hear the father and mother or other parties asking custody of the minor children and who has had the children present in court and has seen and heard the witnesses in the case, is in a much better position than is this court to determine what is best for the welfare of the minors. The trial court has a wide discretion in the matter of awarding custody and such discretion of the trial court will not be interfered with unless it is shown there is a clear abuse thereof."

Finding substantial evidence to show the decision here was based on the best interests of the child, we must hold there was no abuse of discretion on the part of the trial court.

The judgment should be affirmed. It is so ordered.

CARMODY, MOISE and CHAVEZ, JJ., concur.

NOBLE, J., not participating.