223 N.J. Super. 303 (1988)
538 A.2d 830
LESLIE ANN CHRISTOPHER-FREDERICKSON, PLAINTIFF-RESPONDENT, CROSS-APPELLANT,
v.
EDWARD FRANCIS CHRISTOPHER, DEFENDANT-APPELLANT, CROSS-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 19, 1988.
Decided March 4, 1988.
*305 Before Judges O'BRIEN, HAVEY and STERN.
Daniel M. Waldman argued the cause for defendant-appellant, cross-respondent (Rudnick, Waldman, Ford, Addonizio, Pappa & Tonneman, attorneys; Daniel M. Waldman, of counsel; Noel S. Tonneman, on the brief).
Fred M. Klatsky argued the cause for plaintiff-respondent, cross-appellant (Klatsky & Klatsky, attorneys; Fred M. Klatsky, of counsel and on the brief).
The opinion of the court was delivered by O'BRIEN, J.A.D.
Defendant appeals from an order permitting removal of his children to the State of Virginia and awarding counsel fees. Plaintiff cross-appeals from the amount of the counsel fee award. We affirm.
The parties were married on August 18, 1974. Two children were born of the marriage, Catherine Ann Christopher, born June 26, 1981, and Edward F. Christopher, Jr., born February 20, 1984. The parties were divorced by final judgment of April 16, 1986, which incorporated an agreement between the parties, dated October 9, 1985. The agreement provided for joint custody of the children which was defined as "the wife being the primary residential parent with the husband having open and *306 liberal time with the children." A schedule of visitation was set forth in the agreement.[1] It further provided that the father have an equal voice as to decisions pertaining to the health, education and welfare of the children, and that the parties confer with each other on all issues relating to education, religious upbringing, health and welfare of the children. Defendant was to have full access to the children's medical and school records and be informed of all school events in which parents are allowed to participate. Both agreed that the children be reared as Roman Catholics, and the defendant agreed to pay any costs for religious education.
Plaintiff had a tenured position as a school teacher in Rumson, and defendant is an attorney engaged in private practice which requires attendance at many evening meetings. On May 17, 1986, plaintiff married John Frederickson who for the last 11 years has been employed in the Fairfax County, Virginia school system as a school-based administrator. By motion returnable on June 13, 1986, plaintiff made an application to permanently move the children out of New Jersey.[2] At defendant's request, the court appointed Dr. Alan V. Bornstein, Ph.D. as an expert psychologist in the matter. Defendant also retained Dr. Robert C. Bransfield, M.D. as his independent expert. A plenary hearing on the removal application was heard on September 17, 18 and 19, 1986, during which the trial judge heard the testimony of the parties, the two experts and various other witnesses, and rendered his written decision authorizing plaintiff to remove the children to reside with her and her new *307 husband in Fairfax County, Virginia. This was embodied in an order, entered on October 7, 1986 and supplemented by an order dated November 17, 1986, setting forth a precise schedule of visitation and awarding plaintiff $3,500 towards her attorney's fee.[3] Defendant appeals and plaintiff cross-appeals from the amount of counsel fee awarded.
It is an unfortunate by-product of divorce that family units are severed requiring determinations as to the custody of children. To the extent possible, custodial arrangements are agreed to, or ordered by the court, which encourage the participation of both parents in the upbringing of the children. Unfortunately, the children must reside physically with one or the other of the parents, all or part of the time. Although the agreement in this case labeled the custody as "joint," physical custody of the children was in plaintiff with substantial visitation accorded to defendant. The term "joint" envisioned that each party have a voice as to decisions pertaining to the health, education and welfare of the children. We recognize that this arrangement enabled defendant to have regular visitation with his children and to share that visitation with his substantial extended family who live in the area of his home. On the other hand, after divorce, each party has a right to continue their lives as they see fit, including remarriage. However, in our mobile society, when that decision involves remarriage to a person from another state or country, a serious question arises as to with whom the children will reside and the effect of that decision on the noncustodial parent. This circumstance has spawned a substantial number of removal applications.
N.J.S.A. 9:2-2 in pertinent part provides:
When the Superior Court has jurisdiction over the custody and maintenance of the minor children of parents divorced, separated or living separate, and such children are natives of this State, or have resided five years within its limits, they shall not be removed out of its jurisdiction against their own consent, if of *308 suitable age to signify the same, nor while under that age without the consent of both parents, unless the court, upon cause shown, shall otherwise order.
This sensitive issue was addressed in D'Onofrio v. D'Onofrio, 144 N.J. Super. 200 (Ch.Div.), aff'd o.b. 144 N.J. Super. 352 (1976), and our Supreme Court dealt with the issue definitively in Cooper v. Cooper, 99 N.J. 42 (1984). Defendant urges the inapplicability of Cooper because in that case the parties did not have joint custody. We recently addressed that contention in Santucci v. Santucci, 221 N.J. Super. 525 (App.Div. 1987), in which we said:
Since defendant has joint custody of the children, it could be argued that this case is distinguishable from the Cooper case where the mother had sole custody of the children. We recognize that joint custody is comprised of two elements, legal custody and physical custody, and that the legal component encompasses the sharing of legal responsibility and authority for all major decisions concerning the child. Beck v. Beck, 86 N.J. 480, 486-487 (1981). While this precise issue has not been addressed in New Jersey, the California courts treat physical custody subject to visitation in a joint custody decree the same as sole custody for removal purposes. See Gantner v. Gantner, 39 Cal.2d 272, 246 P.2d 923 (1952). [Footnote omitted.] Although the standard for removal in California is different than New Jersey, we agree with that court that for removal purposes the parent with physical custody should be considered as the custodial parent.
In the Gantner case the parties had joint legal custody of the children although the wife was given physical custody of the children. While the court did not specifically address any distinction between joint custody and sole custody, it nonetheless, entertained and authorized a temporary removal order and stated:
If the trial court concludes that the best interests of the children would be promoted by removal to Australia, either permanently or temporarily, and its decision is supported by sufficient evidence, removal would be proper.
[Gantner, supra, 246 P.2d at 929.]
Our decision in Santucci v. Santucci adopting the concept that physical custody, subject to visitation in a joint custody decree, is considered the same as sole custody for removal purposes, is dispositive of defendant's argument on that issue in this case.
In Cooper v. Cooper, supra, the Supreme Court interpreted N.J.S.A. 9:2-2 and established guidelines to be followed when a custodial parent seeks permission to remove children *309 from the State of New Jersey. The custodial parent must first establish (1) that there is a real advantage to that parent in the move, and (2) the move is not inimical to the best interest of the children. Id. 99 N.J. at 56. Once the custodial parent establishes these threshold requirements, the court is required to consider, based upon evidence presented by both parties, visitation and other factors to determine whether the custodial parent has sufficient cause to permit removal under N.J.S.A. 9:2-2. The court established the following factors to be considered: (1) the prospective advantage of the move as either maintaining or improving the general quality of life of both the custodial parent and the children, (2) the integrity of both the custodial parent's motives in seeking to remove the children and the noncustodial parent's motives in seeking to restrain such move, and (3) whether a realistic and reasonable visitation schedule can be reached if the move is allowed. Id. at 56-57.
Our examination of the record reveals that the trial judge fully considered and applied the principles of the Cooper case in reaching his decision. We therefore affirm the order for removal of the children to Virginia substantially for the reasons given by Judge James D. Clyne in his undated written opinion.
We turn to the issue of counsel fees raised by both parties. Plaintiff's counsel submitted a certification of his services in support of the counsel fee charged to plaintiff of $13,324.90, of which the trial judge ordered defendant to pay $3,500. Plaintiff argues that defendant should have been required to pay more, whereas defendant contends he should not have been obliged to pay any. The award of counsel fees in a matrimonial action rests within the sound discretion of the trial judge. R. 4:42-9(a)(1). The wife's needs, the husband's ability to pay, and the good faith of the party in prosecuting or defending are matters to be taken into consideration. Williams v. Williams, 59 N.J. 229, 233 (1971); Brennan v. Brennan, 187 N.J. Super. 351, 358 (App.Div. 1982). Plaintiff *310 argues that the amount of her counsel fees were increased because of defendant's insistence upon pursuing every avenue in his effort to prevent plaintiff from removing his children from New Jersey. She notes that both the court-appointed psychologist as well as defendant's own expert concluded that the children should remain with their mother in the new family unit to be established in Virginia. It is also argued that defendant was unsuccessful in all of his pretrial applications.[4] Plaintiff argues that, as an attorney, defendant should have recognized that her application for removal, in light of the Cooper case, would probably be granted. Her attorney points out that $5,295 of her fees were incurred as a result of the plenary hearing on the issue.
Defendant, on the other hand, contends that the language used by the trial judge, i.e., "the hard position taken by Mr. Christopher was not warranted and that legal fees on both sides could have been saved" reflected some form of sanction against him for pursuing the remedy to which he believed himself entitled.
It is, of course, unfortunate that these matrimonial controversies require such enormous legal costs. We observe initially that plaintiff's decision to remarry and move to Virginia initiated the controversy. She, of course, has a right to remarry and to reside where she wishes, but her decision had dire consequences upon defendant's opportunity to share in the childhood and upbringing of his children. Defendant had every right to resist the removal of his children, and if the language of the court could be construed as the imposition of a sanction upon him for the magnitude of his resistance, it was error. However, our review of the record leads us to conclude that the trial judge was simply evaluating the circumstances which *311 required the expenditure of so large an amount of legal time and noted that defendant's position extended that time. There is, of course, some merit to the fact that both of the experts recommended the removal, and at some point defendant must have been aware that his resistance would probably be unsuccessful. On balance, we consider the decision by the trial judge and the amount of the counsel fees awarded to reflect a balancing of all of the circumstances and a proper exercise of his discretion.
Affirmed.
NOTES
[1] The agreement was modified to provide defendant with additional visitation with the children on Wednesday evenings from 5:00 p.m. until 7:00 p.m.
[2] Defendant was advised on May 14, 1986 that plaintiff intended to remarry in July and move to Virginia at the end of the summer. Because of this circumstance and the additional fact that plaintiff and her new husband had contracted to build a new home in Virginia and plaintiff took a leave of absence from her position in May 1986, defendant contends she had unclean hands in making her removal application.
[3] The order also dealt with sale of the marital home from which no appeal has been taken.
[4] We note however that plaintiff incorrectly argues that our denial of defendant's motion for leave to appeal was a disposition on the merits of his resistance to the removal application. A denial of leave to appeal is not a disposition on the merits.