823 P.2d 299

**Kim Marie JARAMILLO, Petitioner,**

v.

**Francisco Filimon JARAMILLO, Respondent.**

**No. 19324.**

Supreme Court of New Mexico.

Dec. 24, 1991.

Rehearing Denied Jan. 16, 1992.

Reeves, Chavez, Greenfield, Acosta & Walker, Charlotte Greenfield, Las Cruces, for petitioner.

Hubert & Hernandez, Beverly Singleman, Las Cruces, for respondent.

## OPINION

MONTGOMERY, Justice.

We granted certiorari to review the following question arising under the Constitution of the United States and involving an issue of substantial public interest:[1] Does placing the burden of proof upon a joint custodial parent to show that a proposed relocation is in the child's best interest impose unconstitutional restrictions upon the relocating parent's right to travel? Al-

---

1. As contemplated by NMSA 1978, Subsections 34–5–14(B)(3) & (4) (Repl.Pamp.1990).

though our answer to this question is generally favorable to the petitioner's contentions, we decline to go as far as have some courts by creating a presumption in favor of the relocating parent's right to remove the child from the local jurisdiction and imposing a burden on the resisting parent to show that the proposed relocation will be *contrary to* the child's best interests. Nor, however, do we recognize a presumption in favor of the resisting parent, placing a burden on the relocating parent to show that the move will be *in* the child's best interests.

The court of appeals, in the decision here under review, *Murphy v. Jaramillo,* 110 N.M. 336, 795 P.2d 1028 (Ct.App.1990), stated that in joint custody cases the burden is on the party seeking to relocate to show that the relocation is in the best interests of the child. *Id.* at 340, 795 P.2d at 1032. We disagree with this statement, although we agree generally with other statements in the court's opinion, reviewed below, to the effect that the nonrelocating parent should not be placed at a disadvantage by having to show that a proposed move will be inimical to the child's best interests. Because we conclude that the trial court properly determined where the best interests of the child lay under the facts of this case and the court of appeals incorrectly set aside that determination, we reverse the court of appeals and remand to the district court with instructions to reinstate its order revising the parties' parenting plan and permitting the mother to move with the child to another state.

## I. FACTS AND ISSUES

We refer to the parties as did the court of appeals in its opinion. Mother, Kim Marie Jaramillo, and Father, Francisco Filimon Jaramillo, were divorced in September 1987 by a decree of the District Court of Dona Ana County, New Mexico. In connection with their divorce, the parties entered into a stipulation, approved by the court as part of its decree, relating to the custody of their minor child Monica, then age three, and providing that they would share joint legal custody of their daughter. The stipulation also set out the details of a parenting plan providing for Monica's "physical custody" after the divorce and containing other provisions regarding her religious upbringing, schooling, medical care, and financial support. In general, the parenting plan provided that Monica was to reside with Mother each week, except during periods when she resided with Father, which periods basically consisted of alternate weekends, Wednesday of each week, certain specified holidays (including Father's birthday) each year, and several weeks during each summer. As the trial court found in the present proceeding, Monica did well under this joint custody arrangement, with Mother having "primary physical custody" and Father exercising frequent and extensive visitation.[2]

The trial court also found that Monica was a well-adjusted, normally developing, bright, happy four-year-old child, who was bonded to both parents and who had been psychologically, emotionally, and physically nurtured by both parents. The court found that Mother was the primary psychological, emotional, and nurturing parent for Monica.

The proceeding in which the court made these findings had been initiated in September 1988, after Mother informed Father that she planned to move with Monica from the city in which all three of them then lived, Las Cruces, New Mexico, to the state of New Hampshire, where her parents lived and where she believed she could find steadier and more remunerative employment. Upon being so advised, Father petitioned the court to prevent Mother from moving Monica. Several months later, Father made plans to move from Las Cruces to his home town, Socorro, New Mexico, about 150 miles from Las Cruces. He

---

2. The term "visitation" is something of a misnomer in joint custody situations, because under the joint custody statute it really applies only to the "period of time available to a *noncustodial* parent, *under a sole custody arrangement,* during which a child resides with or is under the care and control of the noncustodial parent." NMSA 1978, § 40–4–9.1(L)(8) (Repl.Pamp.1989) (emphasis added).

thereupon requested the court to modify the earlier custody decree to award primary physical custody of Monica to him, so that he could live with his extended family in Socorro and obtain new employment there. The court treated the case as presenting cross-motions for change of custody and heard evidence at two hearings in May and June of 1989.

At trial, the psychologist who had evaluated Monica and her parents testified that Monica identified with her mother as her primary caretaker and that it was in Monica's best interest that her primary residence remain with Mother, whether that residence was in New Hampshire or New Mexico. He also testified that an altered schedule of visitation for Father, including an extended summer visit plus holiday visits during the school year, would allow Monica to maintain and develop a relationship with him.

In its July 27, 1989 order, which contained findings of fact and conclusions of law, the court continued joint legal custody in both parents. With respect to Monica's "physical custody"—*i.e.*, her residence—the court ordered that physical custody with Mother should continue. The court found that there would be real economic advantages and potential educational advantages for Mother and for Monica from Mother's moving to and accepting a job in New Hampshire, where her parents lived. The court found that Mother's motives for moving to New Hampshire were legitimate and acceptable and made the all-important finding that it was in the best interest of Monica that Mother remain as her primary custodial parent. The court also found that there was no evidence that a move by Monica to Socorro with Father would be better for her than a move to New Hampshire and that no evidence had been presented to show adverse effects upon Monica if she accompanied Mother to New Hampshire.

The court also made certain findings in favor of Father—namely, that he had remained current in his support obligations; had exercised visitation with Monica on every possible occasion; had remarried, completed his educational goals, and desired to return to his family home in Socorro to be close to his family; that his desire to move to Socorro was part of a well-thought-out plan which began when he moved to Las Cruces to begin his education, but with the ultimate goal of returning to Socorro; that he had taken Monica to Socorro on numerous occasions, enabling her to become familiar with the Socorro area and close to his extended family; that Monica had no substantial contacts with New Hampshire and that her move to that state would change her way of life from that of a close-knit Hispanic family to a nuclear eastern family and would amount to a major difference in the way Monica would be raised in future years; and that New Mexico was Monica's home state and she had never lived anywhere else.

In its conclusions of law, the court, while continuing "primary physical custody" of Monica in Mother, awarded Father "liberal visitation rights," including but not limited to all reasonable times when he was in New Hampshire, ten consecutive weeks in the summer, and every other Christmas during the time Monica was on Christmas vacation.

Father appealed this order to the court of appeals, contending primarily that the trial court had erred by favoring mother with the same presumption that a sole custodian enjoys in terms of such a custodian's right to relocate and take the child with her. *See Newhouse v. Chavez,* 108 N.M. 319, 322–23, 772 P.2d 353, 356–57 (Ct.App. 1988), *cert. denied,* 108 N.M. 197, 769 P.2d 731 (1989). Father thus maintained that the trial court had improperly shifted the burden of proof to him to show a substantial change of circumstances and what was in the child's best interest. The court of appeals agreed, reversed the trial court's order, and remanded for a new determination of what was in the child's best interest. *Murphy,* 110 N.M. at 339–40, 795 P.2d at 1031–32.

On certiorari, Mother contends that the court of appeals' decision unconstitutionally burdens her right to travel and impermissibly frustrates the statutory presump-

tion in favor of joint custody by increasing the likelihood that divorcing parents will avoid joint custody arrangements and strive instead for sole custody in each parent. Father defends the court's decision, contending that it encourages, rather than discourages, divorcing parents to enter into joint custody arrangements, and arguing that conferring on Mother a presumption in favor of relocation unfairly burdens him with the requirement of showing that a proposed move will be contrary to the child's best interests. We agree in part with each party's contentions but conclude that this record provides no reason to upset the trial court's determination as to where Monica's best interests lay. Accordingly, we remand to the district court for reinstatement of its order.

## II. THE GOVERNING LEGAL PRINCIPLES

### A. *Joint Custody*

We begin our analysis by distinguishing the present case, which involves the issue of relocation in a joint custody situation, from previous New Mexico decisions, which involved the same issue but in situations in which one parent had sole custody of the child. In the latter context, a sole custodian seeking to relocate with a child is entitled to a presumption under, *inter alia, Newhouse v. Chavez* that the move is in the best interests of the child, and the burden is on the noncustodial parent to show that the move is against those interests or motivated by bad faith on the part of the custodial parent. *Newhouse,* 108 N.M. at 322–23, 772 P.2d at 356–57. Here, the trial court determined that in cases of joint legal custody the parent having primary physical custody is treated as the custodial parent for purposes of relocating and therefore receives the benefit of the *Newhouse* presumption. *Murphy,* 110 N.M. at 338, 795 P.2d at 1030. Although

this presumption may apply in sole custody arrangements—a question not before us [3]—we think the court of appeals was correct in stating that the trial court's use of this analogy in joint custody situations was inappropriate.

New Mexico law presumes that joint custody is in the best interest of a child in an initial custody determination. NMSA 1978, § 40–4–9.1(A) (Repl.Pamp.1989). Once joint custody has been decreed, it is not to be terminated unless there has been a substantial and material change in circumstances affecting the welfare of the child, such that joint custody is no longer in the child's best interests. *Id.* The "best interests" criterion, of course, is the lodestar for determining a custody award, under both statute and case law in New Mexico, and probably in all other jurisdictions in this country. *See, e.g.,* § 40–4–9(A) (custody of minor under age fourteen to be determined in accordance with child's best interests); *Garcia v. Garcia,* 81 N.M. 277, 279, 466 P.2d 554, 556 (1970) (referring to "the universal rule that the best interests of the child are paramount"); *Urzua v. Urzua,* 67 N.M. 304, 305, 355 P.2d 123, 124 (1960) ("the welfare of the child is the primary consideration"). *See also, e.g., Fingert v. Fingert,* 221 Cal.App.3d 1575, 1580, 271 Cal.Rptr. 389, 391 (1990) ("The primary concern in a custody dispute is the best interests of the child."); *Pikula v. Pikula,* 374 N.W.2d 705, 711 (Minn.1985) ("The guiding principle in all custody cases is the best interests of the child."); *Hartman v. Hartman,* 328 Pa.Super. 154, 157, 476 A.2d 938, 939 (1984) ("It is well-established that the sole criterion in child custody decisions is the best interests and welfare of the child.").

Our statutes define "joint custody" as an order of the court awarding custody of a child to two parents. Subsection 40–4–9.1(L)(3). "Custody" is defined

**3.** Under the principles discussed in this opinion, the *Newhouse* presumption may be open to some question, involving as it does a preference in favor of a relocating parent and a disadvantage burdening the noncustodial parent who remains behind. However, this case does not present an issue of the continued vitality of the

*Newhouse* presumption, and we express no opinion thereon. There will be time enough to review that issue if and when it arises in a case properly presenting it. Our opinion is limited to the procedures to be followed in terminating or revising a joint custody arrangement.

by Subsection 40–4–9.1(L)(2) as the authority and responsibility to make major decisions in a child's best interests in the areas of residence, medical and dental treatment, education or child care, religion, and recreation. Thus, under the statute, *both* parents have custody of the child and both participate equally in making decisions affecting the child's interests. However, joint custody does not imply an equal division of the child's time between the parents or an equal division of financial responsibility for the child. Subsection 40–4–9.1(L)(3). We believe that the designation of one parent as "primary physical custodian" under a court-approved parenting plan in a joint custody situation simply means that the child resides with that parent more than half the time.[4] In other respects, the voice of each parent with respect to the child's "custody"—his or her residence, medical and dental treatment, education, etc.—is equal to the other's. Consequently, one parent's status as primary physical custodian has no particular significance and should not entitle that parent to the benefit of the *Newhouse* presumption.

Therefore, we agree with the court of appeals that the trial court erred in its conclusion of law that in cases of joint legal custody the parent having primary physical custody is treated as the custodial parent for purposes of relocation. This does not mean, however, that the court of appeals was correct in reversing the trial court. Although the latter court may have used, in part, an incorrect legal standard in assessing the presumption favoring Mother

and the corresponding burden on Father, it does not follow that the trial court's decision continuing joint legal custody in both parents, continuing primary physical custody in Mother, and permitting Mother to move to New Hampshire with her daughter, was necessarily incorrect. A lower court's decision will be affirmed on review if that decision was correct, even though the court may have used an incorrect rationale in arriving at its result. *Scott v. Murphy Corp.*, 79 N.M. 697, 700, 448 P.2d 803, 806 (1968). We shall return below to the question whether, notwithstanding this erroneous conclusion of law, the trial court's decision should nonetheless be affirmed.

### B. *Constitutional Considerations*

■ After dealing with the issue just discussed—Mother's status as "primary physical custodian" and the inappropriateness of favoring her with the procedural advantages afforded a sole custodian—the court of appeals discussed the presumptions and burdens of proof that should apply in joint custody cases in which one of the parents seeks to relocate and take the child with him or her. *Murphy*, 110 N.M. at 339–40, 795 P.2d at 1031–32. Before embarking on this discussion, the court approved the holding in *Sydnes v. Sydnes*, 388 N.W.2d 3 (Minn.Ct.App.1986) (presumption favoring a parent with sole custody does not extend to cases in which parents have joint legal and physical custody and are equally involved with the child's care), and adopted the principle enunciated in that

---

**4.** The term "primary physical custody" is not contained in Section 40–4–9.1, although the phrase "physical custody" appears in two of the subsections in the section. *See* § 40–4–9.1(H) (access to records and information shall not be denied to parent who is not child's physical custodial parent); § 40–4–9.1(J)(4)(e) (child's recreational activities during parents' marriage should continue thereafter, regardless of which parent has physical custody). *See also* § 40–4–11.1(D)(2) ("basic visitation" for purposes of computing support means custody arrangement whereby one parent has physical custody and other parent has visitation less than thirty percent of time); § 40–4–11.1(D)(5) ("split responsibility" means custody arrangement whereby each parent has physical custody of at least one of parties' children); § 40–4–11.1(F) (adjust-

ments for physical custody in computing support to be made as specified in subsection).

In our view, the term "physical custody" is synonymous with other terms used in Section 40–4–9.1, including the term "residence," Section 40–4–9.1(L)(2), and, importantly, the term "period of responsibility." *See* § 40–4–9.1(F) (parenting plan is to include division of child's time and care into periods of responsibility for each parent); § 40–4–9.1(J)(1) (under joint custody award, each parent is to have significant, well-defined periods of responsibility for child); § 40–4–9.1(L)(6) ("period of responsibility" means a specified period of time during which parent is responsible for providing for child's physical, developmental, and emotional needs, including decision making required in daily living).

case as the law in New Mexico. 110 N.M. at 339, 795 P.2d at 1031.

The court's syllabus in *Sydnes* reads as follows: "When parents have been granted joint legal and physical custody and neither is the primary caretaker, the parent petitioning for permission to remove the children to another country has the burden of establishing that such a move would be in the children's best interests." *Sydnes*, 388 N.W.2d at 5. We disagree with the court of appeals that this should be the rule in New Mexico. If the word "state" is substituted for "country" and we ignore the fact that in this case the trial court found that Mother was Monica's primary caretaker, what emerges from the *Sydnes* syllabus is the proposition that a parent who wishes to relocate to another state has the burden of establishing that such a move will be in the child's or children's best interests. As we shall now discuss, we believe that allocating burdens and presumptions in this context does violence to *both* parents' rights, jeopardizes the true goal of determining what in fact *is* in the child's best interests, and substitutes procedural formalism for the admittedly difficult task of determining, on the *facts*, how best to accommodate the interests of all parties before the court, both parents and children.

Citing *Sydnes*, the court of appeals articulated this statement as the law generally applicable in relocation cases involving joint custody: "[O]rdinarily, in joint custody cases, the burden is on the party seeking to relocate to show that the relocation is in the best interests of the child." 110 N.M. at 340, 795 P.2d at 1032. We agree with Mother that placing this burden on the relocating parent and favoring the resisting parent with a corresponding presumption that relocation is not in the child's best interest unconstitutionally impairs the relocating parent's right to travel. This right is so deeply ingrained in American constitutional law that it certainly needs no elaboration by this Court. *See, e.g., Shapiro v. Thompson*, 394 U.S. 618, 629–31, 89 S.Ct. 1322, 1328–29, 22 L.Ed.2d 600 (1969) ("[A]ll citizens [have the right to] be free to travel throughout the length and breadth of our land uninhibited by statutes, rules, or regulations which unreasonably burden or restrict this movement."); *Jones v. Helms*, 452 U.S. 412, 418–19, 101 S.Ct. 2434, 2439–40, 69 L.Ed.2d 118 (1981); *United States v. Guest*, 383 U.S. 745, 757–59, 86 S.Ct. 1170, 1177–79, 16 L.Ed.2d 239 (1966); *Edwards v. California*, 314 U.S. 160, 177–81, 62 S.Ct. 164, 168–70, 86 L.Ed. 119 (1941) (Douglas, J., concurring). Commentators have widely discussed the implications of this right with respect to a relocating parent's right to move from one state to another without the constraints imposed by the risk that he or she will lose custody of his or her child. *See generally, e.g.,* P. Raines, *Joint Custody and the Right to Travel: Legal and Psychological Implications*, 24 J.Fam.L. 625 (1985–86); A. Spitzer, *Moving and Storage of Postdivorce Children: Relocation, the Constitution and the Courts*, 1985 Ariz.St.L.J. 1; Note, *A Proposed "Best Interests" Test for Removing a Child From the Jurisdiction of the Noncustodial Parent*, 51 Fordham L.Rev. 489 (1982); Note, *Residence Restrictions on Custodial Parents: Implications for the Right to Travel*, 12 Rutgers L.J. 341 (1981); Note, *Restrictions on a Parent's Right to Travel in Child Custody Cases: Possible Constitutional Questions*, 6 U.C.Davis L.Rev. 181 (1973).

In New Mexico, the protection afforded the right to travel in the child-custody context has been explicitly recognized by both this Court and the court of appeals. *See Garcia v. Garcia*, 81 N.M. at 279, 466 P.2d at 556 ("[W]e do not agree that the fact the parent with custody is a non-resident or about to become one, for whatever reason, alters the universal rule that the best interests of the child are paramount; that if those interests are best served by being with the mother, even though outside this jurisdiction, removal should be permitted."); *Newhouse v. Chavez*, 108 N.M. at 323, 772 P.2d at 357 ("[A]s a general rule, the non-custodial parent's right to visitation should not prevent the custodial parent from moving when the reasons for the move are legitimate and the best interests of the children will be served by accompanying the custodial parent."); *Alfieri v.*

*Alfieri,* 105 N.M. 373, 376, 733 P.2d 4, 7 (Ct.App.1987) ("In *Garcia,* the New Mexico Supreme Court confirmed the 'best interests of the child' rule, but recognized that the right of a custodial parent to relocate should not be interfered with except where the move would clearly be contrary to the child's welfare.") (dictum). As Father points out, these New Mexico cases all involved sole custody situations, but we perceive no reason why the principle that a parent's right to relocate should not be burdened by an adverse presumption should be any different in the joint custody situation. And, of course, it makes no difference that the parent who wishes to relocate is not prohibited outright from doing so; a legal rule that operates to chill the exercise of the right, absent a sufficient state interest to do so, is as impermissible as one that bans exercise of the right altogether. *See Shapiro,* 394 U.S. at 631, 89 S.Ct. at 1329 ("If a law has 'no other purpose ... than to chill the assertion of constitutional rights by penalizing those who choose to exercise them, then it [is] patently unconstitutional.'" (quoting *United States v. Jackson,* 390 U.S. 570, 581, 88 S.Ct. 1209, 1216, 20 L.Ed.2d 138 (1968) (omission and brackets in original)).

■ By the same token, we believe that the other parent's right to maintain his or her close association and frequent contact with the child should be equally free from any unfavorable presumption that would place him or her under the burden of showing that the proposed removal of the child would be contrary to the child's best interests. "[F]reedom of personal choice in matters of family life is a fundamental liberty interest." *Santosky v. Kramer,* 455 U.S. 745, 753, 102 S.Ct. 1388, 1394, 71 L.Ed.2d 599 (1982) (requiring stringent standards for termination of parental

rights). This freedom of personal choice includes "the freedom of a parent and child to maintain, cultivate, and mold their ongoing relationship." *Franz v. United States,* 707 F.2d 582, 595 (D.C.Cir.1983) (requiring showing of a compelling state interest when divorced parent's access to child was to be terminated pursuant to Federal Witness Protection Program).[5] One commentator, after an extensive review of the psychological literature, apparently prefers the right of the noncustodial parent to maintain his or her contact with the child over the right of the other parent to relocate. She concludes:

> It is rarely in the child's best interest to change geographical locations subsequent to a divorce, regardless of the fact that the parent with whom the child is primarily residing may feel more self-satisfied after the move. The child suffers not only the loss of the remaining parent but also significant environmental changes * * *. The remaining parent suffers the loss of day-to-day contact with her child and, very probably, the loss of personal self-esteem * * *.
>
> * * * [P]arents should not be allowed to remove the children from the marital jurisdiction unless it is clear that such a move is in the children's best interest * * *. [S]uch moves should seldom be granted since the psychological detriment to the children and the remaining parent caused by such a move is rarely justified.

*Raines, supra* at 656. In other words, according to Professor Raines, there should be a presumption that the move will be contrary to the child's best interest, and the burden should be on the relocating parent to prove that the move will promote that interest.[6]

---

**5.** *See also Lehr v. Robertson,* 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983) (holding that Due Process Clause does not protect an unwed father's interest in personal contact with child when father fails to develop a relationship with child); *Quilloin v. Walcott,* 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978) (Georgia statute requiring only mother's consent for adoption of illegitimate child did not violate father's due process rights when father had not sought custody of child and proposed adoption kept child in

existing family unit); *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) (requiring that unwed father be given hearing on his fitness as parent before state could take custody of his children upon mother's death).

**6.** Some courts have adopted this presumption and apply it with varying degrees of stringency. *E.g., In re Marriage of Burgham,* 86 Ill.App.3d 341, 345–46, 41 Ill.Dec. 691, 694, 408 N.E.2d 37,

We think that such a presumption is potentially just as inimical to the child's best interests as the opposite presumption favoring the relocating parent and burdening the resisting parent with the requirement that he or she prove that the move would be contrary to the child's best interests. Neither presumption, except by happenstance, serves the statutory goal in Section 40–4–9 of determining and implementing the best interests of the child. Professor Raines's presumption prefers the interest of the remaining parent to that of the relocating parent; the opposite presumption reverses the preferences assigned to these interests. Both presumptions are subject to the following criticism leveled by the United States Supreme Court several years ago at "procedure by presumption":

> Procedure by presumption is always cheaper and easier than individualized determination. But when, as here, the procedure forecloses the determinative issues of competence and care, when it explicitly disdains present realities in deference to past formalities, it needlessly risks running roughshod over the important interests of both parent and child. It therefore cannot stand.

*Stanley*, 405 U.S. at 656–57, 92 S.Ct. at 1215 (citations omitted).

C. *Presumptions and Burdens*

■ Under our Rules of Evidence, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but it does not shift to that party the burden of proof in the sense of the risk of nonpersuasion, which remains upon the party on whom it was originally cast. SCRA 1986, 11–301; *see Mortgage Inv. Co. v. Griego*, 108 N.M. 240, 243–44, 771 P.2d 173, 176–77 (1989) (discussing effect of presumption in light of revised Rule

301). When parents are operating under a joint custody arrangement and one of them seeks to alter the arrangement, it makes perfectly good sense to impose a presumption in favor of the parent who wishes to continue to operate under the joint custody decree and to place on the party wishing to change the decree the burden to produce evidence that the arrangement is no longer workable and needs to be changed. *See Newhouse*, 108 N.M. at 324, 772 P.2d at 358 (burden is on party seeking modification to overcome presumption in favor of reasonableness of original decree). Considerations of *res judicata* and our statutory presumption in favor of joint custody militate against altering the decree absent a substantial and material change in circumstances affecting the welfare of the child since entry of the joint custody order. *See* § 40–4–9.1(A). But beyond this presumption in favor of an existing joint custody arrangement, further presumptions for or against the relocating parent and the one who remains behind only frustrate achievement of the ultimate goal of determining the arrangement that will best serve the child's interests.

In the typical bipolar model of adversary litigation—in which one party's interests are pitted against those of the opposing party—the use of presumptions and the assignment of burdens of proof probably effectuate, in most instances, the relevant policy goals involved in determining who wins and who loses. When, however, the interests of a third party (or parties—the children) are not only significantly affected by the outcome of the litigation but indeed are paramount in determining that outcome, placing on one party the burden of establishing that his or her interests are the ones that should be vindicated can subordinate the interests of the third party—

40 (1980) (only "superficial showing" need be made that move is consistent with child's best interests); *D'Onofrio v. D'Onofrio*, 144 N.J.Super. 200, 206, 365 A.2d 27, 30 (Ch.Div.) ("real advantage" to custodial parent and child must be shown to justify removal), *aff'd per curiam*, 144 N.J.Super. 352, 365 A.2d 716 (App.Div.1976); *Weiss v. Weiss*, 52 N.Y.2d 170, 175–76, 418 N.E.2d 377, 380–81, 436 N.Y.S.2d 862, 865–66 (1981) ("exceptional circumstances" must be

shown to justify child's removal from jurisdiction). Other courts have adopted a presumption favoring the relocating parent's decision to move. *E.g., Bernick v. Bernick*, 31 Colo.App. 485, 487–88, 505 P.2d 14, 15–16 (1972) (in absence of clear showing to contrary, custodial parent's decision to move should be presumed to have been made in children's best interests); *Auge v. Auge*, 334 N.W.2d 393, 399 (Minn.1983) (adopting presumption favoring removal).

who may be absent and may not even be represented—in the clash over the other two parties' competing hopes and desires. Accepting for purposes of discussion the court of appeals' formulation of the applicable burden in litigation over a custody arrangement (burden on the relocating party to show that the relocation is in the child's best interests), suppose the relocating party fails to carry that burden? Should the court's decision, by something akin to default, favor the resisting party? The result of this will be that the resisting party will be awarded custody or will prevail in his or her proposed modification of the joint custody arrangement. Can the court, or anyone else, say with any confidence that this result will be in the child's best interest?

The "risk of nonpersuasion" referred to in Rule 301 is exactly that—the risk that, if the court is not persuaded by the evidence adduced by the party against whom a presumption is directed (assuming that party bears the burden of proof), that party will lose and the other party will prevail. It is a familiar rule in New Mexico that the refusal of a trial court to adopt a finding requested by the party who has the burden of proof on an issue operates as a finding against the party with the burden and in favor of the opposing party. *E.g., Gallegos v. Wilkerson*, 79 N.M. 549, 551, 445 P.2d 970, 972 (1968). Thus, if the court of appeals' presumption is the law, the trial court's failure to be persuaded, and consequent refusal to find, that relocation will be in the child's best interest means that the resisting party wins the lawsuit and, again by default, acquires custody of the child or adoption of the parenting plan he or she proposes, even though that result may be inconsistent with the child's best interests.

### D. *Equal Footing*

The parties in this case were subject to a decree of joint custody. When Mother decided to move to New Hampshire and take Monica with her, she notified Father of this proposed change, as she was required to do by Subsection 40–4–9.1(J)(4)(a). The par-

ties thereafter were free to attempt to resolve any disagreement over the proposed move by employing any of the methods specified in Subsection 40–4–9.1(J)(5) (agreement; counseling, conciliation, or mediation; binding arbitration; reference to a third party such as a special master; etc.). If none of these methods was successful, either party could invoke a decision by the district court—the ultimate resort specified in Subsection 40–4–9.1(J)(5)(g). At that point, after a hearing, the court—perhaps with the assistance of professional evaluation under SCRA 1986, 11–706 (providing for court-appointed experts), or a special master appointed under SCRA 1986, 1–053 (Cum.Supp.1991) (providing for such appointments),[7] or a guardian ad litem appointed under Section 40–4–8—had to decide whether to terminate joint custody and award sole custody to one parent or the other or to continue joint custody and adopt a revised parenting plan. *See* §§ 40–4–9.1(A), (F), & (J). If the court chose the latter alternative and necessary aspects of the parenting plan were contested, it was mandated either to accept the plan proposed by one of the parties or to combine and revise those plans as it might deem necessary in the child's best interests. Subsection 40–4–9.1(F).

■ In the same or analogous circumstances, courts in other jurisdictions have adopted the rule that neither party is under a burden to prove which arrangement will best promote the child's interests; both parents share equally the burden of demonstrating how the child's best interests will be served. *See Hartman v. Hartman*, 328 Pa.Super. 154, 158, 476 A.2d 938, 940 (1984) (" '[O]nce a substantial change has been established [ (the party seeking modification having the burden of proof) ], both natural parents share equally the burden of demonstrating with which parent the child's best interests will be served.' " (quoting *Daniel K.D. v. Jan M.H.*, 301 Pa.Super. 36, 40–42, 446 A.2d 1323, 1324–25 (1982) (brackets in original)); *Commonwealth ex rel. Michael R. v. Robert R.R.*, 293 Pa.Super. 18, 24, 437 A.2d 969, 972

---

7. As to both options, see Subsection 40–4–9.1(G).

(1981) ("The point is simply that two parents bear an equal burden."); *id.* at 28, 437 A.2d at 974 ("The litigants should simply be put on an equal footing at the outset, and then the entire realm of facts and circumstances which are relevant to determining who is the best custodial parent should be considered." (Cercone, J., concurring)); E. Bertin & V. Klein, *Pennsylvania's Developing Child Custody Law*, 25 Vill.L.Rev. 752, 782 (1979–80) ("Evidentiary rules are changing to accommodate the best interests standard. The burden of proof in custody cases is now shared by both contesting parents.").[8] *See also Presutti v. Presutti*, 181 Conn. 622, 627–28, 436 A.2d 299, 303 (1980) (declining to impose presumption for or against nonresident parent); *Pamperin v. Pamperin*, 112 Wis.2d 70, 74–75, 331 N.W.2d 648, 650–51 (Ct.App.1983) (each party bears equal burden to show that award of custody to that party is in child's best interests); *cf. In re S.D., Jr.*, 549 P.2d 1190, 1200 (Alaska 1976) (in dispositive phase of dependency-and-neglect proceeding to award custody of minors to state agency, placing burden of proof either on parent or on agency is inappropriate).

We adopt this procedure for relocation disputes in New Mexico. As noted above, either party can initiate a proceeding to alter an existing custody arrangement on the ground that a substantial and material change in circumstances affecting the welfare of the child has occurred or is about to occur, and the party seeking such change has the burden to show that the existing arrangement is no longer workable. In almost every case in which the change in circumstances is occasioned by one parent's proposed relocation, the proposed move will establish the substantiality and materiality of the change.[9] It then becomes incumbent on the trial court to consider as much information as the parties choose to submit, or to elicit further information on its own motion from the sources mentioned above or such other sources as the court may have available, and to decide what new arrangement will serve the child's best interests. In such a proceeding, neither parent will have the burden to show that relocation of the child with the removing parent will be in or contrary to the child's best interests. Each party will have the burden to persuade the court that the new custody arrangement or parenting plan proposed by him or her should be adopted by the court, but that party's failure to carry this burden will only mean that the court remains free to adopt the arrangement or plan that it determines best promotes the child's interests.[10]

### III. OUR DISPOSITION

In light of the foregoing principles, we think that reversal of the district court's order was not called for. While the court relied in part on an erroneous conclusion of law—that Mother's status as primary physical custodian under the joint custody decree entitled her to the presumption available to a sole custodian in choosing her and the child's place of residence—we see no indication that the trial court

---

**8.** *But see Gruber v. Gruber*, 400 Pa.Super. 174, 186, 583 A.2d 434, 440 (1990) (custodial parent has initial burden of showing that move is likely to significantly improve quality of life for that parent and children).

**9.** We do not hold that a proposed relocation constitutes a substantial and material change in circumstances as a matter of law, but it is difficult to imagine an instance in which a proposed relocation will not render an existing parenting plan or custody-and-visitation arrangement unworkable. As the court of appeals noted, "a distant relocation by one parent will inevitably trigger a change of circumstances—the inability of the parties to implement their parenting agreement." *Murphy*, 110 N.M. at 339–40, 795 P.2d at 1031–32.

**10.** We do not mean to suggest that the child's best interest is the *only* factor that the court should consider. While some jurisdictions do appear to adopt the child's best interest as the *sole* consideration in custody matters, *e.g., Griffin v. Griffin*, 424 So.2d 1228, 1230 (La.Ct.App. 1982), in New Mexico the best interest of the child is the *primary* or *predominant* consideration. *Urzua*, 67 N.M. at 305, 355 P.2d at 124; *Garcia*, 81 N.M. at 279, 466 P.2d at 556. The respective interests of the parents are relevant, for reasons we have already outlined in this opinion, and should be considered by the court; but the interests of the child take precedence over any conflicting interest of either parent.

applied this erroneous conclusion in a manner prejudicial to Father's rights. The court did find that no evidence had been presented to show that Monica's moving to Socorro with Father would be better for her than moving to New Hampshire with Mother or that there would be any adverse effects upon Monica from accompanying Mother to New Hampshire. To that extent, the court can be said to have ruled that Father failed to meet his burden to produce evidence to rebut a presumption favoring Mother's proposed relocation. However, nothing appears in the court's decision to indicate that placing this burden on Father influenced the court's determination that Monica's best interests would be served by accompanying her mother to New Hampshire.[11] There is no indication that the court relied upon a presumption favoring Mother's move in finding, as it did, based upon competent and substantial evidence, that there would be real economic advantages and potential educational advantages for Monica (as well as for Mother) in moving to New Hampshire, where Mother's parents lived and where Mother had an available job in her parents' doughnut shop. For all practical purposes, the parties were placed on an "equal footing,"[12] with neither party having the burden to prove where Monica's best interests lay. The court received evidence from both parties and from other witnesses and found that Mother was the primary psychological, emotional, and nurturing parent for Monica and that it was in Monica's best interests to remain with Mother as the primary custodial parent (which we interpret to mean the parent with whom Monica would reside the majority of the time and who would have periods of responsibility greater in length than those allocated to Father under the court's revised parenting plan).

In all of this we can find no error. Accordingly, the court of appeals' decision is reversed and the cause is remanded to the district court with instructions to reinstate its order of July 27, 1989.

IT IS SO ORDERED.

RANSOM, C.J., and FRANCHINI and FROST, JJ., concur.

BACA, J., dissents.

BACA, Justice (dissenting).

I write separately for several reasons and respectfully dissent. The effect of the majority opinion is to negate the presumption of joint custody that our legislature has expressed as public policy in New Mexico. In addition, the majority incorrectly determines that requiring a custodial parent to remain in the state unconstitutionally burdens her right to travel. Further, even under the majority's reasoning, this case should be remanded to the trial court for a further determination of the minor child's best interest.

I agree with the majority that custody determinations should be based on the best interest of the minor child. NMSA 1978, § 40-4-9 (1989 Repl.Pamp.); *Garcia v. Garcia*, 81 N.M. 277, 279, 466 P.2d 554, 556 (1970); *Urzua v. Urzua*, 67 N.M. 304, 305, 355 P.2d 123, 124 (1960). The New Mexico Legislature has established a presumption that, at least initially, joint custody is in the

---

11. We acknowledge the theoretical possibility, suggested in the dissent, that the court might have regarded the evidence as evenly balanced in favor of and against the impact of the move on Monica's best interests, and that the court's erroneous presumption in Mother's favor tipped the scales in her direction. However, our review of the evidence convinces us that the court was primarily influenced by the substantial evidence as to where Monica's best interests lay. We think it would disserve the interest of judicial economy and Monica's interest in resolution of this protracted custody dispute to remand this matter for reassessment of the evidence in light of the principles set out in this opinion.

12. In the particular circumstances of this case, the court of appeals held that, because Father intended to move to Socorro while Mother intended to move to New Hampshire, the parties on remand would stand on an equal footing when the court redetermined the best interests of the child. *Murphy*, 110 N.M. at 340, 795 P.2d at 1032. As we have indicated, however, this "equal footing" stance—the absence of a burden to prove that a proposed move will be in the child's best interests and the similar absence of a burden to prove the opposite—obtains, even though only one of the parents may be intending to relocate.

best interest of a child. NMSA 1978, § 40–4–9.1 (1989 Repl.Pamp.). The presumption that joint custody is in the best interest of the child continues unless "there has been a substantial and material change in circumstances affecting the welfare of the child, since the entry of the joint custody order." *Id.* This presumption in favor of joint custody reflects the public policy that a child's best interests will best be served by active involvement of both parents. The presumption also seeks to preserve the parental rights of both parents without favoring one parent to the other parent's detriment.

The court's prior decisions have placed the burden of showing a change in circumstances sufficient to modify an existing decree on the party seeking modification. *Smith v. Smith,* 98 N.M. 468, 470, 649 P.2d 1381, 1383 (1982) (modification of child support); *Specter v. Specter,* 85 N.M. 112, 113–14, 509 P.2d 879, 880–81 (1973) (modification of custody decree); *Davis v. Davis,* 83 N.M. 787, 788, 498 P.2d 674, 675 (1972) (modification of custody decree); *Edington v. Edington,* 50 N.M. 349, 351, 176 P.2d 915, 917 (1947) (modification of custody decree). Implicit in these decisions and our statutory scheme is the idea that the original custody arrangement was, and continues to be, in the child's best interest. NMSA 1978, § 40–4–9.1(A). The presumption then requires the moving party to prove that the modified custody arrangement is in the child's best interests. *Schuermann v. Schuermann,* 94 N.M. 81, 607 P.2d 619 (1980). The majority today retreats from this rule and substitutes a rule that places an equal burden on both parties to show that the best interests of the child would be served by their respective parenting plan after one party has decided to abrogate an existing, successful joint custody decree.[1] The majority opinion rationalizes this result by stating that the

equal burdens approach places each party on "equal footing" in the custody determination.

The effect of the majority opinion on the facts of this case is to abolish the legislative preference for joint custody and replace this preference with a scheme of joint legal custody and split physical custody. This custody arrangement is joint custody in name only and fails to retain many of the characteristics of joint custody as described by the statute. I believe that a parent remaining in New Mexico will have difficulty in carrying out his or her statutory responsibilities and exercising his or her statutory rights, NMSA 1978, § 40–4–9.1, when the child resides in New Hampshire or any similarly distant location. Moreover, the terms used to define the father's rights in the instant case are not consistent with joint custody; rather, the terms used by the trial court indicate that it viewed the custody arrangement more as a sole custody arrangement with "visitation" granted to the father. While joint custody does not require an equal division of physical custody, NMSA 1978, § 40–4–9.1(L), it contemplates a sharing of physical custody in which each parent has a defined "period of responsibility" when he or she is responsible for providing for the child's physical, emotional, and developmental needs. *Id.* This "period of responsibility" differs substantially in duration and quality from "visitation," a term reserved for sole custody arrangements. *Id.* Moreover, as the majority recognizes, the term "primary physical custody" is not defined by the statute, Majority Opinion at 62 n. 4, 823 P.2d at 304 n. 4, and is inconsistent with a grant of joint custody. I believe that a joint custody arrangement that allows one parent to move the child a significant distance from the other parent's location may

---

1. The majority states that "[w]hen parents are operating under a joint custody arrangement and one of them seeks to alter the arrangement, it makes perfectly good sense to impose a presumption in favor of the parent who wishes to continue to operate under the joint custody decree and to place on the party wishing to change the decree the burden to *produce evidence* that

the arrangement is no longer workable and needs to be changed." Majority Opinion at 65, 823 P.2d at 307 (emphasis added). This is not the correct standard. As discussed in the text of this dissent, the correct standard requires the moving party to prove a change of circumstances, not merely to produce evidence that a change has in fact occurred.

no longer be a true joint custody arrangement.

In addition, I cannot agree with the majority that placing the burden of proof on the party seeking the modification would require a court to grant custody that would not be in the best interests of the child. The majority implies that if the burden is placed on the relocating party and that party fails to carry the burden, the result is akin to a default favoring the resisting party. This result, contends the majority, means that the resisting party gains custody even though the move is not in the best interest of the child. Majority Opinion at 65–66, 823 P.2d at 307–308.

Even if a relocating party is able to prove that an impending move is a sufficient change of circumstances to justify considering a modification of the custody arrangement, this does not imply, as the majority opinion suggests, that the move is in the child's best interests, without more. An award of joint custody means that the trial court was satisfied (1) that both parents are fit; (2) that each parent has established a relationship with the child that is beneficial to the child; (3) that both parents desire continued involvement with the child; and (4) that the parents are able to communicate and cooperate in promoting the child's best interest. *Sanchez v. Sanchez,* 107 N.M. 159, 162–63, 754 P.2d 536, 539–40 (Ct.App.1988). In addition, as the court below recognized in the instant case,

> [o]ne factor to be considered in deciding whether to modify custody is the child's adjustment to his home, school, and community. *See* § 40–4–9. Factors stressing stability and continuity of care and environment are of particular importance to younger children. *See Schuermann v. Schuermann; Sydnes v. Sydnes* [, 388 N.W.2d 3, 6 (Minn.App.1986) ]. Thus, ordinarily, in joint custody cases, the burden is on the party seeking to relocate to show that the relocation is in the best interests of the child.

*Murphy v. Jaramillo,* 110 N.M. 336, 340, 795 P.2d 1028, 1032 (Ct.App.1990). Consideration of these factors leads me to believe that the party attempting to relocate should retain the burden of proof that the move is in the child's best interest. *Sydnes v. Sydnes,* 388 N.W.2d 3, 6 (Minn.App. 1986); *Christopher–Frederickson v. Christopher,* 223 N.J.Super. 303, 538 A.2d 830 (App.Div.1988); *Seessel v. Seessel,* 748 S.W.2d 422, 423 (Tenn.1988). As the majority recognizes, this burden need not be an onerous one. Majority Opinion at 64 n. 6, 823 P.2d at 306 n. 6 and cases cited therein.

Nor am I persuaded in this case that the mother's right to travel would be unconstitutionally abridged by enforcing the initial joint custody arrangement and requiring her to either remain in New Mexico or leave her child with the child's father. As the majority recognizes, if the state has a sufficient interest it may limit the right of a person to travel. Majority Opinion at 64, 823 P.2d at 306 (citing *Shapiro v. Thompson,* 394 U.S. 618, 631, 89 S.Ct. 1322, 1329, 22 L.Ed.2d 600 (1969)). Here, there are at least two compelling state interests that justify a limitation on the mother's right to travel. First, the state has a compelling interest in insuring that a custody determination be based on the best interests of the child. This best interest is served by a true joint custody arrangement as presumed by the legislature. Second, the state has a compelling interest in protecting the parental rights of both parents. Because the state has compelling and continuing interests in custody arrangements, I see no constitutional prohibition against requiring the mother to meet her burden of proof as it pertains to the child's best interests. If the burden is not met then the mother must either continue to reside in New Mexico or grant sole custody of the child to the father.

In light of the legislatively created presumption that joint custody is in the child's best interests and the foregoing discussion, I would remand with instructions to the court to consider the presumption in favor of the original custody arrangement and to reweigh the evidence in light of that presumption and/or to take further testimony.

Even if I agreed with the majority's adoption of an "equal burden" on each

party, I would find it necessary to remand this case to the trial court for a further determination of the best interest of the child. The trial court incorrectly applied the presumption from *Newhouse v. Chavez*, 108 N.M. 319, 322–23, 772 P.2d 353, 356–57 (Ct.App.1988), *cert. denied*, 108 N.M. 197, 769 P.2d 731 (1989), and, in effect, required the father, as the "noncustodial" parent, to prove that the move was not in the child's best interest.[2] When the father failed to meet this burden, the trial court granted custody to the mother.

In this case, the record is equally balanced in favor of each party. For instance, the trial court found that Monica is "nurtured, psychologically, emotionally, and physically by *both* parents." Further, the trial court found that *"[b]oth* parents have contributed equally to the physical raising of Monica and she is bonded to *both.*" In addition, the trial court found that Monica "has no substantial contacts with New Hampshire" and that "a move ... to New Hampshire would be a change in her way of life ... that will amount to a major difference in the way that Monica will be raised in future years." Finally, the trial court found that Monica was familiar with the Socorro area and "is close to the [father's] extended family and has made numerous friends in the Socorro area."[3] The record contains substantial evidence to support these findings. I believe that the trial court awarded custody of Monica to her mother, at least in part, because of its erroneous reliance on the *Newhouse* presumption. I do not believe that the "interest of judicial economy," Majority Opinion at 68 n. 11, 823 P.2d at 310 n. 11, is sufficient to override the father's interest in being placed on an "equal footing" with the mother in this custody determination. *Id.* at 68, 823 P.2d at 310. Thus, even under the majority's formulation, this case

should be remanded to the trial court for further findings and a final determination of Monica's best interest.

For the above reasons, I respectfully dissent.

---

2. As discussed above, a term such as "noncustodial parent" has no place where joint custody is granted because, under a true joint custody arrangement, each parent is a "custodial" parent during his or her respective "period of responsibility."

3. Other findings also support the father's position. For example, the trial court found that the father was current in his financial, medical,

and educational obligations to Monica. He had exercised visitation on "every possible occasion ... including times when he had to take off from work or change his plans to enable him to care for [Monica]. He "has re-married, has completed his educational goals, and desires to return to [his] family home in Socorro." This move was "part of a well thought out plan."